979 P.2d 1120

CITIZENS FOR THE PROTECTION OF THE NORTH KOHALA COASTLINE, by Toni Withington as Chairman of its Steering Committee; Kai Keali'Ikea'Ehale Kaholokai, Plaintiffs–Appellants/Cross–Appellees,

v.

COUNTY OF HAWAI'I; Stephen K. Yamashiro in his capacity as Mayor of the County of Hawai'i; Planning Commission of the County of Hawai'i; Donald D. Manalili, in his capacity as Chairman of the Planning Commission; Planning Department of the County of Hawai'i; Virginia Goldstein in her capacity as Planning Director of the County of Hawai'i; John Does 1–10; Jane Does 1–10 and Doe Governmental Agencies 1–10, Defendants–Appellees/Cross–Appellees,

and

Chalon International of Hawai'i, Inc., a Hawai'i corporation, Defendant–Intervenor–Cross–Appellant.

No. 20723.

Supreme Court of Hawai'i.

July 13, 1999.

Steven D. Strauss, on the briefs, Hilo, for plaintiffs-appellants/cross-appellees.

Frederick Giannini, Deputy Corporation Counsel, on the briefs, for defendants-appellees/cross-appellees.

Steven S.C. Lim (Sherrill A. Atwood with him on the briefs), on the briefs, Hilo, for defendant-intervenor-appellee/cross-appellant.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by KLEIN, J.

Plaintiff-appellant/cross-appellees Citizens for Protection of the North Kohala Coastline (Citizens) and defendant-intervenor-appellee/cross-appellant Chalon International of Hawai'i, Inc. (Chalon) appeal the third circuit court's March 17, 1997 order and April 28, 1997 judgment (1) denying Chalon's August 30, 1996 motion to dismiss or in the alternative for summary judgment as to the issue of Citizens' lack of standing, and (2) granting Chalon's April 5, 1995 motion to dismiss or in the alternative for summary judgment as to all counts of Citizens' first amended complaint for declaratory judgment and injunctive relief filed on June 23, 1995 in favor of Chalon and defendants-appellees/cross-appellees County of Hawai'i (County) (collectively, "defendants").

On appeal, Citizens argues that the circuit court erred in concluding that: (1) "it did not establish an injury in fact nor raise genuine issues of material fact relating to the existence of an injury in fact[;]" (2) as a matter of law, environmental review was not triggered by Hawai'i Revised Statutes (HRS) Chapter 343 (1993); (3) the County acted in accordance with the Hawai'i County Code (HCC) § 25–20(c)(4) (1983) in accepting and approving Chalon's final environmental impact report (FEIR); and (4) the Hawai'i County Council properly approved Chalon's boundary amendment because the land area was fifteen acres or less.

Chalon contends that the circuit court erred in ruling that Citizens met its legal burden as to the issue of standing and failed to apply the doctrines of res judicata and collateral estoppel to prohibit Citizens from relitigating the standing issue.

We hold that the circuit court did not err in ruling that: (1) Citizens had standing to invoke the court's jurisdiction to seek declaratory and injunctive relief; (2) the County acted in accordance with HCC § 25–20(c)(4) in accepting and approving Chalon's FEIR; and (3) the Hawai'i County Council properly approved Chalon's boundary amendment because the land area was fifteen acres or less. However, we hold that environmental review was triggered by HRS chapter 343, insofar as Chalon's Mahukona Lodge project (the Mahukona project) proposes the use of state land under HRS § 343–5(a)(1) (1993).[1] Ac-

---

1. HRS § 343–5(a) states in pertinent part:

    **Applicability and requirements.** (a) Except as otherwise provided, an environmental assessment shall be required for actions which:

    (1) Propose the use of state or county lands or the use of state or county funds, other than funds to be used for feasibility or planning studies for possible future programs or projects which the agency has not approved,

cordingly, we affirm in part and vacate in part the circuit court's order and remand for proceedings consistent with this opinion.

## I. BACKGROUND

In May 1991, Chalon filed an application with the Hawai'i County Planning Commission (HPC) for a Special Management Area (SMA) permit to build a hotel, residential subdivision, 18–hole golf course, tennis facilities, and other related site improvements and infrastructure. The proposed project is located adjacent to the Mahukona Harbor in North Kona on the island of Hawai'i.

A public hearing on the SMA permit was scheduled for May 11, 1993. At the hearing, Toni Withington, in her capacity as chair of Citizens' steering committee, formally requested that the HPC grant Citizens a contested case hearing on Chalon's application.[2] The HPC thereafter ordered Citizens to submit additional information supporting its requests to participate in the contested case hearing. After receiving the information and hearing public testimony, the HPC denied Citizens' contested case request and approved Chalon's SMA permit.

Thereafter, Citizens sought review in the circuit court of the HPC's decisions denying its contested case request and the issuance of Chalon's SMA permit. The circuit court, exercising its review powers pursuant to HRS § 91–14(a) (1993), affirmed the HPC's decision to deny Citizens its request to participate in a contested case hearing and further affirmed the HPC's approval of Chalon's

SMA permit request. Following the circuit court's entry of judgment on May 17, 1995, Citizens appealed to this court (No. 19051). In No. 19051, we filed a summary disposition order on June 16, 1997, affirming the circuit court's notice and judgment filed on May 17, 1995 in Chalon's favor.

Simultaneously with its appeal of the agency decision, Citizens filed a complaint on July 15, 1993 and an amended complaint on June 23, 1995 for declaratory and injunctive relief against the County, alleging that:

(1) "The County Planning Department Wrongfully Failed to Require Preparation of an Environmental Impact Statement by Developer Chalon" (Count I);

(2) "Enactment of Hawai'i Ordinances Nos. 93–109 and 93–113 was in violation of Chapter 343, HRS" (Count II);

(3) "The County Wrongfully Failed to Allow for Proper State Land Use Review as Required by Chapter 205, HRS" (Count III);

(4) "Enactment of County of Hawai'i Ordinances Nos. 93–109 and 93–113 was in violation of § 3–15 of the Charter of the County of Hawai'i in that neither of these Ordinances nor the land use district boundary amendment which they purported to ratify or approve conformed to the General Plan of the County of Hawai'i" (Count IV); and

(5) "Enactment of County of Hawai'i Ordinances Nos. 93–109 and 93–113 was

adopted, or funded, or funds to be used for the acquisition of unimproved real property; provided that the agency shall consider environmental factors and available alternatives in its feasibility or planning studies;
(2) Propose any use within any land classified as conservation district by the state land use commission under chapter 205;
(3) Propose any use within the shoreline area as defined in section 205A–41;
(4) Propose any use within any historic site as designated in the National Register or Hawai'i Register as provided for in the Historic Preservation Act of 1966, Public Law 89–665, or chapter 6E;
(5) Propose any use within the Waikiki area of Oahu, the boundaries of which are delineated in the land use ordinance as amended, establishing the "Waikiki Special District";

(6) Propose any amendments to existing county general plans where such amendment would result in designations other than agriculture, conservation, or preservation, except actions proposing any new county general plan or amendments to any existing county general plan initiated by a county; [or]
(7) Propose any reclassification of any land classified as conservation district by the state land use commission under chapter 205[.]

2. Kai Keli'ikea'ehale Kaholokai also sought a contested case hearing on Chalon's SMA permit and joined in the suit with Citizens against the County and Chalon. However, since the filing of the opening brief in case No. 19051, a stipulation was entered dismissing all claims by Kaholokai. Thus, this appeal does not address any claims or causes of action relating to Kaholokai.

*ultra vires* and in violation of Chapter 205, HRS" (Count V).

Citizens further stated that "[t]he purpose of this suit is to invalidate the process by which the County of Hawai'i granted a Special Management Area Permit, application no. 91–3 ("SMA permit") for approximately 387 acres at Mahukona, North Kohala, and declare SMA Permit, application no 91–3, of the County of Hawai'i null and void."

Pursuant to a stipulation for intervention, Chalon was allowed to intervene in the action. Thereafter, on April 5, 1995, Chalon filed a motion to dismiss as to all counts of Citizens' complaint for declaratory judgment and injunctive relief. The County later joined the motion on April 7, 1995. Essentially, defendants argued that the "statutes cited by [Citizens] in [its] complaint d[id] not confer jurisdiction on [the] court" or, in the alternative, defendants were entitled to judgment as a matter of law.

A hearing was held on the motion on May 15, 1995, wherein the circuit court granted Chalon's motion to dismiss or in the alternative summary judgment. The circuit court filed its decision and order on July 6, 1995, ruling that: (1) Citizens lacked standing to assert its claim for relief; (2) as a matter of law, the project did not require environmental review triggered by HRS Chapter 343; and (3) the County properly granted the district boundary amendment relating to the project.

On July 17, 1995, Citizens filed a motion for reconsideration of the circuit court's decision and order, requesting the court consider *Public Access Shoreline Hawai'i v. Hawai'i County Planning Commission,* 79 Hawai'i 425, 903 P.2d 1246 (1995), on the issue of standing. Following a hearing on the motion held on September 12, 1995, the circuit court entered its order on December 15, 1995, denying Citizens' motion for reconsideration of the decision and order as to all issues, except the issue of standing. After an evidentiary hearing, the court reserved the issue for further consideration.

On August 30, 1996, Chalon filed a motion to dismiss or in the alternative for summary judgment as to the sole remaining issue of Citizens' standing. A hearing on the motion was scheduled for December 6, 1996. On that date, the circuit court conducted an evidentiary hearing on the issue of whether Citizens had standing as an organization to assert native Hawaiian rights based on its members' alleged exercise of customary and traditional native Hawaiian practices on the property.

Following the hearing, the court filed its findings of fact (FOFs), conclusions of law (COLs), and order on March 17, 1997, which state in relevant part as follows:

### CONCLUSIONS OF LAW

\* \* \*

1. Plaintiff [Citizens] is entitled to standing and this court has jurisdiction to decide this case.

2. Environmental review was not triggered and not required by Chapter 343, HRS for the Mahukona Lodge Project. Chalon fully complied with all applicable County environmental review requirements and procedures for the Mahukona Lodge Project.

3. There are no genuine issues of material fact and Defendants and Chalon are entitled to judgment on Count I that [,] as a matter of law, County Planning Department correctly determined that Chapter 343, HRS does not require Chalon to submit an Environmental Impact Statement for the Mahukona Lodge Project.

4. There is no genuine issue of material fact and Defendants and Chalon are entitled to judgment as a matter of law that Chapter 343, HRS is not applicable to the applications and approvals at issue for the Mahukona Lodge Project.

5. The County properly enacted the Hawai'i County Ordinances Nos. 93–109 and 91–113 in accordance with Chapter 205, HRS ("District Boundary Amendment") as a matter of statutory construction. Where, as is the case here, a land use district boundary amendment is contemplated and the land area is fifteen acres of [sic] less, it is properly addressed by the appropriate county authority and not the State Land Use Commission.

6. There is no genuine issue of material fact and Defendants and Chalon are entitled to judgment as a matter of law that the County acted in accordance with § 25-20(c)(4) of the Hawai'i County Code in accepting and approving the FEIR submitted by Chalon, and that the Mahukona Lodge Project complied with the procedural and substantive requirements of Chapter 25 of the Hawai'i County Code.

7. The Mahukona Lodge Project is consistent with the General Plan. There is no requirement in the General Plan requiring that the entire Mahukona Lodge Project be within the Urban District, or be zoned Resort Hotel, or that the 35 acre minimum "Resort Acreage" must be exclusively located within the Urban District. Such a requirement would not be "within the framework" of the General Plan. To the contrary, the General Plan expressly calls for the inclusion within Minor Resorts of "active and passive recreation area commensurate with the scale of development."

8. There are no genuine issues of material fact and Defendants and Chalon are entitled to judgment on Count II[,] as a matter of law, that the enactment of Hawai'i ordinances Nos. 93–109 and 93–113 did not violate Chapter 343, HRS.

9. There are no genuine issues of material fact and Defendants and Chalon are entitled to judgment on Count III[,] as a matter of law, that the County did not violate Chapter 205, HRS in the enactment of Ordinances Nos. 93–109 and 93–113.

10. There are no genuine issues of material fact and Defendants and Chalon are entitled to judgment on Count II[,] as a matter of law that the County properly conducted the land use review required under Chapter 205, HRS and Section 28–2 of the Hawai'i County Code.

11. There are no genuine issues of material fact and Defendants and Chalon are entitled to judgment on Count IV[,] as a matter of law, [that] enactment of County of Hawai'i Ordinances Nos. 93–109 and 93–113 did not violate § 3–15 of the County Charger of the General Plan of the County of Hawai'i.

12. There are no genuine issues of material fact and Defendants and Chalon are entitled to judgment on Count VI[,] as a matter of law, [that] the enactment of County of Hawai'i Ordinances Nos. 91–109 and 93–113 was not *ultra vires* and did not violate Chapter 343, HRS.

Citizens and Chalon timely appealed.

## II.   *STANDARDS OF REVIEW*

Because Chalon styled its motion both as a motion to dismiss for lack of jurisdiction and for summary judgment and supported it with affidavits and exhibits, the circuit court properly treated Chalon's motion as a motion for summary judgment. *See* Hawai'i Rules of Civil Procedure (HRCP) Rule 12(b);[3] *see also State ex. rel Bronster v. United States Steel Corp.*, 82 Hawai'i 32, 38–39, 919 P.2d 294, 300–01 (1996); *Au v. Au*, 63 Haw. 210, 212–13, 626 P.2d 173, 176 (1981). We therefore apply the standard of review applicable to summary judgment orders.

We review a circuit court's award of summary judgment *de novo* under the same standard applied by the circuit court. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). As we have often articulated:

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Id.* (citations and internal quotations omitted); *see* Hawai'i Rules of Civil Procedure

---

3.   HRCP Rule 12(b) provides in relevant part:

> If, on a motion asserting the defense numbered [12(b)](6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

(HRCP) Rule 56(c) (1990). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.*, 65 Haw. 58, 61, 647 P.2d 713, 716, (1982) (citations omitted).

> *Estate of Doe v. Paul Revere Ins. Group*, 86 Hawai'i 262, 269–70, 948 P.2d 1103, 1110–11 (1997) (quoting *Morinoue v. Roy*, 86 Hawai'i 76, 80, 947 P.2d 944, 948 (1997)) (brackets omitted). We have also held that when making a summary judgment determination, "we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion." *Morinoue*, 86 Hawai'i at 80, 947 P.2d at 948 (quoting *Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)) (brackets omitted).

*Shin v. McLaughlin*, 89 Hawai'i 1, 2–3, 967 P.2d 1059, 1060–61 (1998).

Moreover, "[a]lthough an agency's decision carries a presumption of validity in a generic agency appeal under the applicable provision of HAPA," *see Hawai'i's Thousand Friends v. City and County of Honolulu*, 75 Haw. 237, 248, 858 P.2d 726, 732 (1993) (citing HRS § 91–14 and *Sussel v. Civil Service Commission*, 74 Haw. 599, [608], 851 P.2d 311, 316 (1993) (citation omitted)), Citizens' petition for declaratory judgment in the present case was brought as an original action under HRS § 632–1. Therefore, the circuit court was not required to defer to the HPC's determination on the potential environmental impact of the Mahukona project. Thus, the

circuit court correctly made "its own independent findings regarding the salient facts of the instant case." *See id.*

Accordingly, the correct standard under which this court must review the circuit court's finding in this case is the clearly erroneous standard of review. *Gadd v. Kelley*, 66 Haw. 431, 442, 667 P.2d 251, 259 (1983). "A [finding of fact] is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *Amfac, Inc. v. Waikiki Beachcomber, Inv. Co.*, 74 Haw. 85, 116, 839 P.2d 10, 27–28, *recon. denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citations omitted). *Id.*

## III. DISCUSSION

### A. The Circuit Court Did Not Err in Granting Citizens Standing To Invoke the Court's Jurisdiction in an Action for Declaratory Relief.[4]

Citizens first contends that the circuit court erred in concluding that "it did not establish an injury in fact nor raise a genuine issue of material fact relating to the existence of an injury in fact." Likewise, as noted above, Chalon describes the issue of Citizens' standing in terms of proving an injury in fact sufficient to invoke a contested case hearing. These arguments wholly misapprehend and blur the distinction between standing to participate in a contested case hearing under HRS § 91–14 and standing in an action for declaratory relief under HRS § 632–1 (1993).[5]

> Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate

---

4. As a preliminary matter, Citizens' first amended complaint, filed on June 23, 1995, fails to cite the proper statute to invoke the circuit court's jurisdiction for declaratory relief. Citizens instead relies on substantive statutes such as HRS §§ 46–1 (1993), 205–1 (1993), 343–1 (1993) and 92–12(b) (1993), which do not confer subject matter jurisdiction on the circuit court. Regardless of the erroneous recitation by Citizens' attorneys, it is clear that the relief being sought was based on HRS §§ 603–21.5 (1993) (general jurisdiction of the circuit courts) and 632–1 (1993) (declaratory judgments). Thus, the circuit court properly accepted jurisdiction.

5. HRS § 632–1 states in relevant part:

As a general rule, "[s]tanding is the aspect of justiciability focusing on the party seeking a forum rather than on the issues he wants adjudicated." *Hawai'i's Thousand Friends v. Anderson,* 70 Haw. 276, 281, 768 P.2d 1293, 1298 (1989) (quoting *Life of the Land v. Land Use Commission,* 63 Haw. 166, 172, 623 P.2d 431, 438 (1981)). In order for individuals or groups legitimately to invoke contested case hearing procedures on SMA permit applications before the State Land Use Commission (LUC), they must be "directly and immediately affected by the Commission's decision[.]" HPC Rule 4-2(6)(B). In *PASH,* we stated that this requires a party to "demonstrate [that its] ... interests were injured[.]" *PASH,* 79 Hawai'i at 434, 903 P.2d at 1255 (citing *Pele Defense Fund v. Puna Geothermal Venture,* 77 Hawai'i 64, 69, 881 P.2d 1210, 1215 (1994)). The demonstration is evaluated via a three-part "injury in fact" test requiring: "(1) an *actual* or *threatened* injury, which, (2) is traceable to the challenged action, and (3) is likely to be remedied by favorable judicial action." *Id.* at 434 n. 15, 903 P.2d at 1255 n. 15 (citation omitted).[6]

On the other hand, for the purposes of establishing standing in an action for declaratory relief, HRS § 632-1 interposes less stringent requirements for access and participation in the court process. As this court explained in *Richard v. Metcalf,* 82 Hawai'i 249, 254 n. 12, 921 P.2d 169, 174 n. 12 (1996),

> Although HRS § 632-1 provides for standing to sue "[i]n cases of actual controversy," HRS § 632-6 clarifies that
>
> > [the] purpose [of HRS chapter 632] is to afford relief ... without requiring one of the parties interested so to invade the rights asserted by the other as to entitle the party to maintain an ordinary action therefor. It is to be liberally interpreted and administered, with a view to

making the courts more serviceable to the people.

*Id.* (citing *Life of the Land,* 63 Haw. at 172, 623 P.2d at 438).

In support of its argument, Chalon maintains that Citizens "(1) has no interest whatsoever in the property that is the subject of this action, and (2) does not lawfully reside on said property." Chalon's contentions misapprehend the standing requisites this court extensively addressed in our prior case law. In *Life of the Land v. Land Use Commission,* 63 Haw. 166, 623 P.2d 431 (1981), this court held that Life of the Land, an environmental organization, and its members, who were neither owners of reclassified land nor owners of land adjoining reclassified land, had standing to invoke judicial scrutiny of LUC procedures, as well as its determinations, by way of declaratory action. *Id.* at 169, 623 P.2d at 436.

Indicating that the personal or special interests or "rights" advanced by Life of the Land were subject to judicial protection, we held that the criteria prescribed by HRS §§ 91-7 and 632-1 "present[ed] no barriers to adjudication." *Id.* at 177, 623 P.2d at 441. In so holding, we explained that, although standing principles are governed by "prudential rules" of judicial self-governance, standing requisites "may also be tempered, or even prescribed, by legislative and constitutional declarations of policy." *Id.* at 172, 623 P.2d at 438 (footnote omitted). Indeed, we emphasized that the touchstone of this court's notion of standing is 'the needs of justice.' " *Id.* at 176, 623 P.2d at 441.

This court subsequently indicated that, "where the interests at stake are in the realm of environmental concerns[,] 'we have not been inclined to foreclose challenges to administrative determinations through restrictive applications of standing require-

---

the uncertainty or controversy giving rise to the proceeding.

**6.** In *PASH,* this court also set forth a jurisdictional analysis for appeal of the denial of standing to participate in a contested case hearing. The appellant must: (1) appeal from a contested case (SMA permit application proceeding before the Commission was a contested case); (2) appeal from either "a final decision and order ... or a

preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief[.]" HRS § 91-14(a); (3) demonstrate that the organization was involved, or participated, in the contested case hearing that culminated in the unfavorable decision; and (4) demonstrate that its interests were injured. *Id.* at 431, 903 P.2d at 1252.

ments.' " *Mahuiki v. Planning Commission*, 65 Haw. 506, 512, 654 P.2d 874, 878 (1982) (quoting *Life of the Land*, 63 Haw. at 171, 623 P.2d at 438). We reiterated our basic position that "standing requirements should not be barriers to justice" and endorsed the view that " '[o]ne whose legitimate interest is in fact injured by illegal action of an agency or officer should have standing because justice requires that such a party should have a chance to show that the action that hurts his interest is illegal.' " *Id.* at 512–13, 654 P.2d at 878 (quoting *East Diamond Head Association v. Zoning Board of Appeals*, 52 Haw. 518, 523 n. 5, 479 P.2d 796, 799 n. 5 (1971) (citations omitted)).

Moreover, in *Pele Defense Fund v. Puna Geothermal Venture*, 77 Hawai'i 64, 70, 881 P.2d 1210, 1216 (1994), we indicated that appellees alleging that a geothermal venture's activities would expose them " 'to potential harm[,] including diminished property values, deterioration of air quality, odor nuisance, and possible physical injury resulting from the permitted operations[,]' " would clearly confer standing in an action for declaratory and injunctive relief because "we could simply conclude that 'the pleadings ... contain a sufficient showing of individualized harm ... [so that] it cannot be said that [Appellees] sought 'to do no more than vindicate their own value preferences through the judicial process.' " *Id.* (citing *Hawai'i's Thousand Friends v. Anderson*, 70 Haw. 276, 283, 768 P.2d 1293, 1299 (1989) (citations omitted)). *See also Akau v. Olohana Corporation*, 65 Haw. 383, 390, 652 P.2d 1130, 1135 (1982) (an injury to a recreational interest is an injury in fact sufficient to constitute standing to assert the rights of the public for purposes of declaratory and injunctive relief); *Mahuiki*, 65 Haw. at 515, 654 P.2d at 880 (those who show aesthetic and environmental injury are allowed standing to sue under HRS chapter 91 where their interests are "personal" and "special," or where a property interest is also affected) (citing *Life of the Land v. Land Use Commission*, 61 Haw. 3, 8, 594 P.2d 1079, 1082 (1979)).

■ In the instant case, Citizens asserts personal and special interests sufficient to invoke judicial resolution under HRS § 632–1. Citizens contends that, inasmuch as its members reside "in close proximity" to the proposed Mahukona project and are "long time and frequent users" of the Mahukona coastline, injury to its members' quality of life is threatened. It asserts that the Mahukona area is the "primary ocean recreation area" and "the only place where people may access the water or safely launch a boat for approximately 29 miles of the Kohala coastline." According to Citizens, Mahukona is a "community recreational resource[,]" used for "picnics, ... swimming and boating.... [F]ishermen [also] use shore areas along the length of the project's ocean frontage." In addition, "Mahukona is ... the site of a major spiritual center," a "navigational keyway for islands to the south," and a locale for gathering Hawaiian plants and herbs. Citizens urges that the Mahukona project may cause irreversible changes to the North Kohala coastline, affecting vital fishing grounds and causing "degradation of the quality of the nearshore marine environment." It argues, therefore, that because its members use the shoreline area "within dozens of feet" of Chalon's proposed structures, "such use is potentially harmed by the project[.]"

As our prior cases demonstrate, although Citizens' members are neither owners nor adjoining owners of the Mahukona project, they nonetheless alleged an injury in fact sufficient to constitute standing to participate in a declaratory judgment action. Chalon's reliance on *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992),[7] is thus misplaced, inasmuch as the United States Supreme Court's doctrine on the issue of standing does not bind us. *Life of the Land*, 63 Haw. at 173, 623 P.2d at 439.

As in *Life of the Land*, we perceive no sound reason to foreclose Citizens' challenge through a restrictive application of standing requirements. *See* 63 Haw. at 171, 623 P.2d at 438. Because a declaratory judgment will

---

7. In *Lujan,* the United States Supreme Court held that an environmental group failed to assert an injury in fact and therefore did not allege an Article III case or controversy, when it claimed purely speculative, nonconcrete injuries resulting from governmentally-funded activities abroad, which potentially threatened certain endangered animal species. *Id.* at 578, 112 S.Ct. 2130.

serve to terminate the uncertainty or controversy giving rise to this proceeding and will foster "the needs of justice," we hold that the circuit court did not err in concluding that Citizens had standing to participate in the instant action for declaratory and injunctive relief.

B. *Res judicata and/or Collateral Estoppel Do Not Bar Citizen's Suit on the Issue of Standing.*

Chalon contends that the doctrines of res judicata and collateral estoppel bar Citizens from relitigating the issue of standing. Specifically, Chalon argues that, because the issue of Citizens' standing was "fully and finally adjudicated" in its agency appeal, Citizens' complaint in the instant action is barred. Chalon's argument presumes that the standing issue presented and the relief requested in the instant action are the same as those sought in the agency appeal. Indeed, Chalon points out that Citizens' action for declaratory and injunctive relief seeks, *inter alia,* "a ruling reversing the granting of [Chalon's] SMA permit by the County[.]"

This court has long treated collateral estoppel as an included doctrine of res judicata and applied the elements of both doctrines interchangably:

> Res judicata will bar relitigation where (1) the issue decided in the prior adjudication is identical with the one presented in the action in question, (2) there was a final judgment on the merits, and (3) the party against whom res judicata is asserted was a party or in privity with a party to the prior adjudication.

*Dorrance v. Lee,* 90 Hawai'i 143, 149, 976 P.2d 904, 909 (1999) (citing *Foytik v. Chandler,* 88 Hawai'i 307, 315, 966 P.2d 619, 627 (1998) (citations omitted)). We recently held, however, that the test for collateral estoppel additionally requires that "the particular issue of fact or law that was decided in the prior adjudication be essential to the earlier valid and final judgment." *Id.* at 149, 976 P.2d at 910. Thus,

> the doctrine of collateral estoppel bars relitigation of an issue where: (1) the issue decided in the prior adjudication is identical to the one presented in the action in

question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication [.]

*Id.*

■ In the instant case, the issue of standing to appeal an agency decision under HRS § 91–14, decided in the prior agency appeal, is not "identical to the one presented in the action in question." The issue of whether Citizens had standing to pursue an action for declaratory relief under HRS § 632–1 was not before the trial court in the agency appeal; rather, as mentioned, the court was faced only with the issue of whether Citizens had standing to appeal an agency's denial of a contested case hearing and grant of an SMA permit under HRS § 91–14.

Moreover, as described above, although the underlying premise of Citizens' complaint for declaratory and injunctive relief has the similar effect of challenging Chalon's SMA permit approval, its complaint for declaratory and injunctive relief goes further to challenge, *inter alia,* the validity of the ordinances and statutes underlying the Commission's procedures for granting SMA permits and the applicability of HRS chapter 343 requiring preparation of an EIS by Chalon.

Applying the *Dorrance* factors to Chalon's claims, it is clear that neither res judicata nor collateral estoppel bar Citizens' claim. The issue of standing to sue for declaratory and injunctive relief was neither decided nor could have been decided in the previous agency appeal. Moreover, the relief requested in the instant action is not a remedy that the circuit court could have afforded Citizens in its prior agency appeal. *See Pele Defense Fund,* 77 Hawai'i at 70 n. 13, 881 P.2d at 1216 n. 13 (in an agency appeal, although a party may seek declaratory and injunctive remedies, "the court only has power to grant relief in accordance with HRS 91–14(g)."). Thus, given that the first prong of the *Dorrance* test has not been satisfied, we hold that Citizens' standing claim in the present

case is not barred by the doctrines of res judicata or collateral estoppel.

### C. Environmental Review of the Mahukona Lodge Project Is Required Under HRS Chapter 343 Because the Project Proposes the Use of State Land.

#### 1. Use of State Land Under HRS § 343–5(a)(1)

■ Citizens argues that the circuit court erred in its determination that, as a matter of law, environmental review was not triggered by HRS chapter 343. Citizens specifically contends that Chalon's proposed construction of two underpasses below the Akoni Pule Highway for golf carts and maintenance vehicles to travel to the portions of Chalon's golf course situated on either side of the highway constitute the use of state lands within the meaning of HRS Chapter 343, thereby requiring environmental review of the project.[8]

■ Chalon contends, on the other hand, that such use does not constitute the "use" of state lands. In the alternative, it argues that, if the construction of the underpasses under the state highway in fact constitute use of state land, "negotiations with the State of Hawai'i for an easement so that such an underpass may eventually be constructed are in the early stages." As such, it maintains that environmental review under HRS chapter 343 is premature. We disagree.

In *Kahana Sunset Owners Association v. County of Maui*, 86 Hawai'i 66, 947 P.2d 378 (1997), this court held that a proposed development to install a 36–inch drainage line beneath Napilihau Street, connecting to an existing 24–inch culvert beneath Lower Honoapi'ilani Highway indisputably "constitutes 'use of state or county lands,' which is within the class of actions that triggers HEPA. An environmental assessment is therefore mandatory, unless the project falls within an exemption." *Id.* at 71, 947 P.2d at 383. It is thus clear that construction of two underpasses under a state highway constitutes use of state lands for purposes of HRS 343–5(a)(1) (1993).

Chalon maintains, however, that even assuming that the underpasses constitute the use of state land, the issue is one of timing. It argues that, because the underpasses are a mere idea, "the earliest practicable time for such an EA would be at the time that Chalon submits detailed plans and applies for approval of the easement and underpass to the State Department of Transportation or Department of Land and Natural Resources...." An EA prepared before that point, it submits, "would be devoid of meaningful information" and consist of "vague generalities."

In *Kahana Sunset*, we held, *inter alia*, that it was error for the Maui Planning Commission to defer a decision on the preparation of an environmental assessment to the Department of Public Works where installation of a drainage pipe under a public street, as part of a larger project, triggered HRS chapter 343. *Id.* at 75, 947 P.2d at 387. There, the Maui Planning Commission had concluded that the issue was whether

> the work that would be required to install whatever drainage under whatever public roadway constitute [sic] a development in [and] of itself or is contained within this entire special management area application.... [T]he determination as to whether or not an environmental assessment is triggered by putting a culvert under a public roadway within public lands is going to be determined by the Department of Public Works[,] not by this commission.

*Id.* at 74, 947 P.2d at 386. Disagreeing with the Commission and citing HRS § 343–5(c) (1993),[9] we held that "the action for purposes of HEPA is the proposed Napilihau develop-

---

**8.** Citizens also argues that the potential use of Akoni Pule Highway leading to the Mahukona project constitutes use of state land. This argument is without merit.

**9.** HRS § 343–5(c) provides:
Whenever an applicant proposes an action specified by subsection (a) which requires approval of an agency, and which is not a specific type of action declared exempt under section 343–6, the agency receiving the request for approval shall prepare an environmental assessment of such proposed action at the earliest practicable time[.]

104

ment," not just the proposed drainage line beneath Napilihau Street. *Id.* at 75, 947 P.2d at 387. We thus held that "the Commission is the agency receiving the request for approval of the action, and it is therefore the agency responsible for preparation of the environmental assessment." *Id.* In so holding, we recognized that "[i]solating only that particular component of the development for environmental assessment would be improper segmentation of the project." *Id.*

In the instant case, the action for purposes of HEPA is the proposed Mahukona Lodge Project development. Indeed, in its numerous permit applications and reports, Chalon consistently proposed the two underpasses as integral parts of its development project. Chalon's golf course use permit application acknowledges that two underpasses will be constructed under the Akoni Pule Highway "to provide access for golf carts and maintenance vehicles to the 3 golf holes mauka of the highway and the golf course maintenance facility." Moreover, its Special Management Area use permit application states that "[a]bove Akoni Pule Highway will be three of the golf holes. Golf cart underpasses would connect the golf holes on either side of the Akoni Pule Highway. The wastewater treatment facilities would also be located above the highway."[10] Chalon's Traffic Analysis Report asserts that "[p]ortions of the golf course will be built mauka of the Akoni Pule Highway and will be reached via two underpasses." Its self-styled FEIR, submitted to the HPC for approval, references "[a]n 18–hole golf course (situated both mauka and makai of Akoni Pule Highway)" and includes several maps indicating the locations of both underpasses. Its change of zone application refers to an "18–hole championship quality

golf course situated both mauka and makai of Akoni Pule Highway."

Further, Chalon's golf course use permit application characterizes the golf course as "an integral part of the proposed Mahukona Lodge and agricultural lot subdivision being planned on the Mahukona–Kapaanui lands." Its SMA permit petition lists as "specific actions proposed within the SMA" the "[c]onstruction of an 18–hole championship quality golf course, clubhouse, and related maintenance facilities." Its FEIR also forecasts that the golf course will be used "from 80 rounds per day in 1995 to 150 rounds per day in 2010, with lodge guests, single family residents, golf club members and regional visitors being the four principal demand sources." There is no indication in the record that Chalon ever proposed an alternative route of travel between the parts of its golf course situated on either side of the highway.

Accordingly, the HPC is the agency receiving the requests for approval of the Mahukona project and is therefore the agency responsible for preparation of the environmental assessment.

Requiring early environmental assessment of the Mahukona project comports with HRS § 343–5(c)'s express mandate that environmental review be undertaken at the "earliest practicable time." This result also finds support in the spirit and intent of HEPA to "establish a system of environmental review which will ensure that environmental concerns are given appropriate consideration in decision making along with economic and technical considerations ... [and] alert decision makers to significant environmental effects which may result from the implementation of certain actions." HRS § 343–1 (1993).[11]

---

**10.** Chalon's Change of Zone Application contains identical language.

**11.** HRS § 343–1 provides:
   The legislature finds that the quality of humanity's environment is critical to humanity's well being, that humanity's activities have broad and profound effects upon the interrelations of all components of the environment, and that an environmental review process will integrate the review of environmental concerns with existing planning processes of the State and counties and alert decision makers to significant environmental effects which may re-

sult from the implementation of certain actions. The legislature further finds that the process of reviewing environmental effects is desirable because environmental consciousness is enhanced, cooperation and coordination are encouraged, and public participation during the review process benefits all parties involved and society as a whole.
   It is the purpose of this chapter to establish a system of environmental review which will ensure that environmental concerns are given appropriate consideration in decision making

Consonant with these policies, both federal and state courts have recognized that environmental review must occur early enough to function practically as an input into the decision making process. In construing the National Environmental Policy Act (NEPA), for example, the United States Court of Appeals for the Ninth Circuit cautioned that "[a]n assessment must be "prepared early enough so that it can serve practically as an important contribution to the decision making process and will not be used to rationalize or justify decisions already made." *Save the Yaak Committee v. J.R. Block,* 840 F.2d 714, 718 (9th Cir.1987) (quoting 40 C.F.R. § 1502.5 (1987)). It further stated that federal agencies are required to " 'integrate the NEPA process with other planning at the *earliest possible time* to insure that planning and decisions reflect environmental values....' " *Id.* (emphasis added) (citing *Andrus v. Sierra Club,* 442 U.S. 347, 351, 99 S.Ct. 2335, 60 L.Ed.2d 943 (1979) (citations omitted), and *California v. Block,* 690 F.2d 753, 761 (9th Cir.1982)). According to the *J.R. Block* Court, "[t]he rationale behind this rule is that inflexibility may occur if delay in preparing an EIS is allowed: 'After major investment of both time and money, it is likely that more environmental harm will be tolerated.' " *Id.* (quoting *Confederated Tribes and Bands of the Yakima Indian Nation v. FERC,* 746 F.2d 466, 471–72 (9th Cir.1984) (citation omitted)). *See also Sierra Club v. Peterson,* 717 F.2d 1409, 1414 (D.C.Cir.1983) ("the EIS is a decision-making tool intended to 'insure that ... environmental amenities and values may be given appropriate consideration in decisionmaking....' Therefore, the appropriate time for preparing an EIS is *prior* to a decision, when the decisionmaker retains a maximum range of options.") (ellipsis points and emphasis in original) (citation omitted); Rodgers, *Environmental Law* § 9.7, at 921 (2d. ed. 1994) (NEPA's purpose is to require consideration of environmental factors "before project momentum becomes irresistible, before options are closed, and before agency commitments are set in concrete.").

along with economic and technical consider-

Accordingly, decisions reflecting environmental considerations can most easily be made when other basic decisions are also being made, that is, during the early stages of project conceptualization and planning. Here, because the development and general dimensions of the project have been known to Chalon from the start, there should be no difficulty in providing "meaningful information" for HRS chapter 343 environmental review. Moreover, at this early stage, environmental review under HRS § 343–5 would be an integral part of the decision-making process. Indeed, to require the DOT or DLNR, rather than the County of Hawai'i, to conduct an EA at some point in the future "might call for a burdensome reconsideration of decisions already made and would risk becoming a *'post hoc* rationalization[ ] to support action already taken.' " *Citizens for Responsible Government v. City of Albany,* 56 Cal.App.4th 1199, 1221, 66 Cal.Rptr.2d 102, 114 (1997) (brackets in original).

In order to achieve the salutary objectives of HEPA, and because Chalon's proposed underpasses have been, from the start, an integral part of the project, we hold that Chalon's proposed construction of two underpasses under the Akoni Pule Highway, constitutes "use of State lands" within the meaning of HRS § 343–5(a)(1).

### 2. *Other "Triggers"*

Citizens additionally argues that HRS chapter 343 is triggered because Chalon proposes use of the shoreline under HRS § 343–5(a)(2) (1993) and/or conservation land under HRS § 343–5(a)(3) (1993). It argues that the mere "impact" on nearby shoreline and conservation areas implicates HRS chapter 343. These arguments are without merit.

HRS §§ 343–5(a)(2) and (3) provide:

(a) Except as otherwise provided, an environmental assessment shall be required for actions which:

. . .

(2) Propose any use *within* any land classified as conservation district by the state land use commission under chapter 205;

ations.

(3) Propose any use *within* the shoreline area as defined in section 205A–41[.]

(Emphasis added.)

The record reveals that Chalon does not propose use *within* the shoreline area or conservation district. As such, the trial court did not err in concluding that HRS chapter 343 was not triggered by these actions.

D. *The County Acted in Accordance with Hawai'i County Code § 25–20(c)(4) In Accepting and Approving Chalon's Final Environmental Impact Report.*

Citizens next contends that the County failed to act in accordance with HCC § 25–20(c)(4) (1983) in accepting and approving Chalon's FEIR, which "has no basis in either State or County law, was not subject to proper agency or public review, did not contain adequate review of alternatives or mitigating measures, and contained numerous inaccuracies of data on historic sites, flora, fauna, and marine life at Mahukona." Specifically, Citizens argues that (1) HCC chapter 25 triggers environmental review under HRS chapter 343; and (2) the HPC erroneously determined that Chalon's FEIR was the equivalent to a County EIS required by HCC chapter 25. Both arguments are without merit.

At the time the present cause of action arose, the now-repealed HCC § 25–20(c)(4) [12] provided the following:

(c) Application for a change of zoning district shall be on a form prescribed by the director and shall be accompanied by:

. . .

(4) Any other plans or information requested by the director or planning commission; provided that all proposed amendments involving the construction of hotel or condominium developments, shall require the submission of an environmental impact statement.

**12.** HCC Chapter 25 was repealed and replaced by Ordinance 96–160, effective December 7, 1996. The present HCC Chapter 25 specifically provides that a " 'county environmental report' does not include a State environmental impact

(Citation omitted.) Insofar as the language of HCC § 25–20(c)(4) fails to make reference to HRS Chapter 343, it does not evince an intent on the part of the Hawai'i County Council to invoke the procedural requirements of HRS ch. 343. Thus, contrary to Citizens' contentions, we are left with the conclusion that HCC § 25–20(c)(4) provides for a wholly separate and distinct County EIS preparation requirement from the environmental review process required under HRS Chapter 343.

As to Citizens' next contention, the now-repealed HCC § 25–4(b)(21) (1983) provided that

'environmental impact statement' means a statement which describes the physical, social, economic, and natural resource consequences of a proposed action, including but not limited to a discussion of alternatives to the proposed action, adverse environmental effects which cannot be avoided should the proposal be implemented, the relationship between local short term uses of man's environment and the maintenance and enhancement of long-term productivity, any irreversible and irretrievable commitments of resources which would be involved in the proposed action, and economic and social analysis of the proposed action.

(Citation omitted.) In the present case, the Hawai'i County Planning Director, Virginia Goldstein, determined that under the HPC, Chalon fully complied with HCC chapter 25:

the applicant [Chalon] has submitted the information necessary to complete our review of the applications and have accordingly scheduled public hearings. After careful review of the "Mahukona Final Environmental Impact Report" accepted or processing on June 6, 1991, I have also found that it is equivalent to the 'Environmental Impact Statement' described in [HCC] § 25–4(b)(20) in that it addresses all the considerations described therein. Further, despite the discrepancy in the

statement prepared in compliance with Chapter 343, Hawai'i Revised Statutes." HCC §§ 25–1–5(b)(31); *see also* 25–2–42(5) (providing a similar definition).

title, your submission complies with the requirements of Section 25–20(c)(4).

■ This court "use[s] the 'rule of reason' to determine whether an EIS is legally sufficient in adequately disclosing facts to enable a decision-making body to render an informed decision." *Price v. Obayashi Hawai'i Corp.*, 81 Hawai'i 171, 182, 914 P.2d 1364, 1375 (1996) (quoting *Life of the Land v. Ariyoshi*, 59 Haw. 156, 164, 577 P.2d 1116, 1121 (1978)). In accordance with this principle, we will not substitute our judgment for that of the HPC and overturn its determination that Chalon's FEIR sufficiently complies with county code standards. *See id.* at 183 n. 12, 914 P.2d at 1378 n. 12 (observing that "courts are reluctant to 'second guess' the decision-making body regarding the sufficiency of an EIS.").

We thus hold that the circuit court did not err in ruling that the County acted in accordance with HCC § 25–20(c)(4) in accepting and approving Chalon's FEIR.

### E. *The Hawai'i County Council Properly Approved Chalon's Boundary Amendment.*

Lastly, Citizens contends that the circuit court erred in concluding, as a matter of law, that the Hawai'i County Council properly processed Chalon's boundary amendment because the land area to be redistricted was fifteen acres or less.

HRS § 205–3.1(a) (1993) expressly states that "[d]istrict boundary amendments involving land areas greater than fifteen acres shall be processed by the land use commission pursuant to section 205–4." (Citation omitted.) Subsection (c) provides that

> [d]istrict boundary amendments involving land areas of fifteen acres or less, except in conservation districts, shall be determined by the appropriate county land use decision-making authority for said district and shall not require consideration by the land use commission pursuant to section 205–4.

(Citation omitted.)

In the instant case, Chalon submitted its petition for change of zone requesting that "14.5± acres" of its Mahukona property be rezoned from agricultural to urban. Because

our sole duty is to give effect to a statute's plain and obvious meaning, *see Shin v. McLaughlin*, 89 Hawai'i 1, 4, 967 P.2d 1059, 1062 (1998) (citing *Ross v. Stouffer Hotel Co.*, 76 Hawai'i 454, 461, 879 P.2d 1037, 1044–45 (1994) (citation omitted)), we are not at liberty to circumvent HRS chapter 205's express mandate. Therefore, inasmuch as HRS § 205–3.1 requires county review of Chalon's 14.5± acre change of zone request, the circuit court did not err in concluding that the Hawai'i County Council properly approved Chalon's Boundary Amendment.

### IV. CONCLUSION

For the foregoing reasons, we hold that the circuit court did not err in ruling that: (1) Citizens had standing to invoke the court's jurisdiction to seek declaratory and injunctive relief; (2) the County acted in accordance with HCC § 25–20(c)(4) in accepting and approving Chalon's FEIR; and (3) the Hawai'i County Council properly approved Chalon's boundary amendment because the land area was fifteen acres or less. However, we hold that environmental review was triggered by HRS chapter 343, insofar as Chalon's Mahukona Lodge project proposes the use of state land under HRS 343–5(a)(1). Accordingly, we affirm in part and vacate in part the circuit court's order and remand for proceedings consistent with this opinion.