HAWAI'I'S THOUSAND FRIENDS, Plaintiff–Appellee, v. CITY AND COUNTY OF HONOLULU; DEPARTMENT OF PARKS AND RECREATION OF THE CITY AND COUNTY OF HONOLULU; WALTER M. OZAWA, in his capacity as Director of the Department of Parks and Recreation, City and County of Honolulu; and DONALD A. CLEGG, in his capacity as Director of the Department of Land Utilization, Defendants–Appellants

NO. 15923

(S.P. NO. 91–0457)

SEPTEMBER 16, 1993

MOON, C.J., LEVINSON, NAKAYAMA, AND RAMIL, JJ., AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS, IN PLACE OF KLEIN, J., RECUSED

OPINION OF THE COURT BY MOON, C.J.

In October 1991, the director of the Department of Land Utilization (DLU) of the City and County of Honolulu (City) determined that the City's Department of Parks and Recreation (DPR) was not required to obtain a special management area (SMA) use permit for its proposed demolition of several structures at Camp

Kailua. Thereafter, plaintiff–appellee Hawai'i's Thousand Friends (Friends) filed a petition in the First Circuit Court seeking a declaration by the court that the DPR must obtain a SMA use permit prior to any demolition at Camp Kailua, and that the director of the DLU cannot exempt the DPR from this permit requirement. The circuit court granted Friends' petition for declaratory relief, and the City then appealed to this court. We affirm.

## I. **BACKGROUND**

This case concerns the City's plan to transform Kailua Beach Park (the park) from a community park into one of seven ocean recreation centers in various parts of Oahu. The City had been incrementally acquiring private property to expand the park in order to fulfill its plan. One of these incremental acquisitions was the City's purchase in 1984 of "Camp Kailua," a group of structures owned by the Methodist church.

According to the City's Kailua Beach Park Master Plan (master plan), the new park will be larger and will entail: 1) installation of a sprinkler system, 2) a reconstructed beach park pavilion, 3) the relocation of a road and a parking lot, along with "reconfiguration" of the lot, 4) the addition of shade trees, and 5) construction of a new, ten–foot–wide bikeway. Additionally, as part of the master plan, the City planned to demolish several of the structures at Camp Kailua, which included six buildings and a storage shed.

However, because the entire area of the proposed park lies within a coastal zone management area, the City was required to determine, by application to the DLU, whether it must acquire a SMA use permit prior to the demolition. A SMA use permit can only be granted by the Honolulu City Council, following a prescribed procedure,

including public hearings, provided for in chapter 25 (Shoreline Management) of the Revised Ordinances of Honolulu (ROH).

Accordingly, on October 14, 1991, defendant–appellant Walter M. Ozawa, Director of the DPR, wrote to defendant–appellant Donald A. Clegg, Director of the DLU, asking whether the City needed a SMA use permit prior to the planned demolition. Ozawa also enclosed a copy of the Environmental Assessment for the master plan and a copy of the DLU Master Application Form, specifying the proposed demolition by tax map key and lot area. On October 17, 1991, Loretta Chee, acting Director of the DLU, responded, stating that the DLU had determined that no SMA use permit would be required because the planned demolition was not considered "development" within the definitions contained in ROH chapter 25.

According to the applicable definitions under chapter 25, actions that do not constitute "development" are exempt from the SMA use permit requirement. Conversely, if an action is construed to be development, a SMA use permit is required. Chee again wrote to Ozawa on October 22, 1991, reiterating that no SMA use permit would be required, and stating that the DLU's decision was "based upon our review of the environmental assessment and finding that the cumulative impact of the demolition, when combined with the other activities proposed for [the park], will not have a significant ecological or environmental impact on the Special Management Area."

Meanwhile, on October 18, 1991, Friends filed a petition for declaratory relief in the First Circuit Court, requesting that the court declare that the City, the DPR, and Ozawa, as DPR's director, must apply for and obtain a SMA use permit prior to any demolition at Camp Kailua, and that Clegg, as Director of the DLU, cannot exempt

the DPR from its obligation to obtain such permit. Friends brought its petition expressly pursuant to Hawai'i Revised Statutes (HRS) § 603–21.5 (general jurisdiction of the circuit courts) and § 632–1 (declaratory judgments).

On November 1, the City, the DPR, Ozawa, and Clegg (collectively, the City) filed a motion to dismiss or, in the alternative, for summary judgment. The circuit court held a hearing on both the petition and the City's motion on November 13, 1991. By minute order entered on November 26, the court granted the petition and denied the City's motion. On December 6, 1991, the City filed a motion for reconsideration or, in the alternative, for clarification of the court's minute order. The circuit court denied this motion on March 11, 1992.

Meanwhile, on January 14, 1992, the circuit court entered its order granting Friends' petition for declaratory relief. The court ruled that where demolition of existing structures is part of an overall project, and where such project may have a significant environmental impact on the special management area, the demolition is "development" within the meaning of chapter 25, ROH. Implicit in the court's granting of Friends' petition was its finding that the overall park project, of which the proposed demolition is a part, may have a significant environmental impact on the special management area. The court ordered that no demolition at Camp Kailua or other development of the park be allowed until the City applied for and obtained a SMA use permit.

On February 11, 1992, the City filed a notice of appeal to this court from the circuit court's January 14 order, essentially claiming that: 1) the court had no jurisdiction to entertain Friends' petition, either because Friends failed to exhaust administrative remedies, or because the petition should have been brought pursuant to HRS

§ 205A–6, which is the specific statutory provision for challenges to agency actions under the coastal zone management area; 2) the court abused its discretion by erroneously ignoring or overturning the DLU's finding that the park project would have no significant effect on the special management area; and 3) the court erroneously construed the relevant sections of chapter 25, ROH.

## II. DISCUSSION
### A. The City's Jurisdictional Contentions

On appeal, the City contends that the circuit court did not have jurisdiction over Friends' petition in the instant case and asserts two separate theories. First, the City argues that Friends was required to exhaust its administrative remedies before it could properly appeal its case to the circuit court. The City maintains that, according to the Revised Charter of the City and County of Honolulu § 6–909(a), the Zoning Board of Appeals (ZBA) is authorized to "[h]ear and determine appeals from the actions of the director of land utilization in the administration of the zoning and subdivision ordinances and any rules and regulations adopted pursuant thereto." The City contends that under the administrative procedure outlined in § 6–909(a), Friends was required to appeal to the ZBA from the DLU's determination that the Camp Kailua demolition did not require a SMA use permit. The City further contends that only after the ZBA ruled on the DLU's action could Friends then appeal the ZBA's decision to the circuit court pursuant to the Hawai'i Administrative Procedure Act (HAPA), HRS chapter 91.

The City cites our decision in **Kona Old Hawaiian Trails Group v. Lyman**, 69 Haw. 81, 734 P.2d 161 (1987), which the City claims is "on all fours" with the facts of the present case. In *Kona*, an environmental

group had filed suit under HRS § 205A–6 to challenge the Hawai'i County Planning Director's failure to issue a special management area use permit.[1] We noted that HRS § 205A–6 was not meant to provide a vehicle for judicial review of an agency action, but was rather "an alternative remedy for an agency's noncompliance with the [coastal zone management area] by authorizing a civil action" for a claim " 'originally cognizable in the courts.' " *Id.* at 93, 734 P.2d at 169 (citation omitted).

However, we also noted that the Hawai'i County Charter specifically provides that the Board of Appeals, counterpart to the Honolulu county ZBA, "shall hear and determine *all appeals from the actions of the planning director and planning commission." Id.* at 91 n.11, 734 P.2d at 167 n.11 (emphasis in original). We therefore held that although HRS § 205A–6 is normally available as an

---

[1] HRS § 205A–6 is the enforcement section within chapter 205A of the HRS, Coastal Zone Management, which governs the State's special management areas. HRS § 205A–6 provides in relevant part:

(a)  Subject to chapters 661 [governing actions by or against the State] and 662 [State Tort Liability Act], any person or agency may commence a civil action alleging that any agency:

(1)  Is not in compliance with one or more of the objectives, policies, and guidelines provided or authorized by this chapter within the special management area and the waters from the shoreline to the seaward limit of the State's jurisdiction; or

(2)  Has failed to perform any act or duty required to be performed under this chapter; or

(3)  In exercising any duty required to be performed under this chapter, has not complied with the provisions of this chapter.

(c)  A court, in any action brought under this section shall have jurisdiction to provide any relief as may be appropriate[.]

(d)  Any action brought under this section shall be commenced within sixty days of the act which is the basis of the action.

(e)  Nothing in this section shall restrict any right that any person may have to assert any other claim or bring any other action.

alternative vehicle to judicial review of agency action affecting the coastal zone management area, because the Hawai'i County Charter specifically provided an administrative procedure, under which *all* actions of the planning director were appealable to the county Board of Appeals, "the request for judicial intervention in the administrative process should not have preceded the resolution by the Board of Appeals of the question of whether the planning director's action in [not issuing the SMA use permit] was proper." *Id.* at 94, 734 P.2d at 169.

The City thus argues that according to the rule of *Kona*, Friends was likewise required to appeal the DLU's exemption of the demolition to the ZBA before filing an original action in the circuit court. However, § 6–909(a) of the Honolulu Charter, unlike the Hawai'i County Charter, specifically restricts appeals to the ZBA from those DLU actions concerning "the administration of the zoning and subdivision ordinances and any rules and regulations adopted pursuant thereto." DLU decisions concerning the coastal zone management area or special management areas, including the issuance of SMA use permits, have nothing to do with the zoning or subdivision ordinances. Unlike the Hawai'i County Charter's specific provision for appeal of all actions of the planning director to the Hawai'i County Board of Appeals, neither the Honolulu Charter nor the ROH provides for administrative review of the DLU's decision to exempt a proposed action from the SMA use permit requirement. *Kona* is therefore inapposite to the instant case, and the City's reliance on it is misplaced.

The City's second jurisdictional theory concerns HRS § 632–1, pursuant to which Friends brought its petition for declaratory action in the circuit court. HRS § 632–1 specifically states that "[w]here . . . a statute provides a

special form of remedy for a specific type of case, that statutory remedy shall be followed[.]" And this court has held that "where such a statutory remedy exists, declaratory judgment [under HRS § 632–1] does not lie." ***Punohu v. Sunn***, 66 Haw. 485, 487, 666 P.2d 1133, 1134 (1983). The City argues that because Friends had available to it the specific statutory remedy provided in HRS § 205A–6, which it failed to plead in its complaint, the circuit court had no jurisdiction to grant Friends' petition under HRS § 632–1. The City further argues that even if Friends' suit had been filed pursuant to HRS § 205A–6, it was untimely under the sixty–day limitation of HRS § 205A–6(d).[2]

Both of the City's contentions are without merit. As previously noted, HRS § 205A–6(e) specifically provides that "[n]othing in this section shall restrict any right that any person may have to assert any other claim or bring any other action." HRS § 205A–6 therefore clearly allowed Friends to bring a generic declaratory action under HRS § 632–1 without the need to proceed under HRS § 205A–6. Additionally, because Friends petitioned for declaratory relief under HRS § 632–1, the sixty–day time limit contained in § 205A–6(d) was inapplicable. Accordingly, the circuit court had jurisdiction over Friends' HRS § 632–1 petition for declaratory relief in the instant case.

## B. **The SMA Use Permit Requirement**

The requirements regarding SMA use permits are contained in chapter 25 — Shoreline Management — of the ROH (1990). Pursuant to these requirements, the

---

[2] *See supra* note 1.

director of the DLU "shall declare a development proposal exempt where the director finds that the proposal is not defined as development under Section 25–1.3." ROH § 25–3.3(b)(3)(B). However, any proposal which is construed to be development must obtain either a special management area minor permit, issued by the director of the DLU, or a SMA use permit, granted by the City Council following public hearings and certain other mandated requirements. ROH § 25–3.3(b)(3)(A) and §§ 25–5.1 et. seq.

According to ROH § 25–1.3(2)(G), in the definitions section of chapter 25, development does not include the "[d]emolition or removal of structures, except those structures located on any historic site as designated in national or state registers." Because Camp Kailua is not a historic site, the demolition of the camp structures is thus seemingly not development. However, according to ROH § 25–1.3(3),

> [w]henever [the director of the DLU] finds that any use, activity or operation excluded in paragraph (2) of this definition is or may become part of a larger project, the cumulative impact of which may have a significant environmental or ecological effect on the special management area, that use, activity or operation shall be defined as "development" for the purpose of this paragraph.

Therefore, because the Camp Kailua demolition is part of the overall Kailua Beach Park project, the possible cumulative impact of the whole park project must be assessed in order to determine whether the demolition itself constitutes development. If the park project "may have a significant environmental or ecological effect on the special management area," then the demolition "shall be defined as 'development,' " and will require a SMA use

permit.[3] In the instant case, as stated in its letter of October 22, 1991 to Ozawa, the DLU explicitly determined that the park project "will not have a significant ecological or environmental impact." The DLU therefore decided that under the applicable definitions, the proposed demolition was not development under the § 25–1.3(3) exception.

The circuit court disagreed with the DLU's determination on this issue and implicitly found that because the park project may have a significant environmental impact on the special management area, the demolition would fall under the 25–1.3(3) exception and be considered development, thus requiring a SMA use permit. The City contends that the circuit court thereby erroneously made its own factual finding on the issue, contrary to the finding of the director of the DLU, and then erroneously granted Friends' petition on the basis of its own mistaken finding.

---

[3] Although ROH § 25–3.3(b)(3)(C) authorizes the director of the DLU to issue SMA *minor* permits, which unlike SMA use permits do not require city council approval, the director of the DLU is only empowered to issue minor permits when the development has a valuation not in excess of $65,000 *and* "[w]ill not significantly affect the special management area." If, however, the instant demolition were to be considered development, that would only be because the larger park project "may have a significant . . . effect on the special management area." Therefore, the antecedent definition under which the demolition would be considered development and thus require some kind of SMA permit, necessarily precludes the issuance by the director of the DLU of a SMA minor permit in the instant case.

Although the valuation of a proposed development is neither an issue in the instant case nor relevant to the foregoing analysis, we note that in 1991 the State Legislature amended HRS chapter 205A, the statute governing coastal zone management, to increase the threshold amount from $65,000 to $125,000. Act 129, § 1, 1991 Haw. Sess. Laws 338, 340. However, the City has apparently not yet amended the applicable sections of ROH 25.

The City also contends that the court was required to defer to the agency's determination.

Although an agency's decision carries a presumption of validity in a generic agency appeal under the applicable provision of HAPA, HRS § 91–14, *see, e.g.*, *Sussel v. Civil Service Commission*, 74 Haw. 599, 608, 851 P.2d 311, 316, *reconsideration denied*, 74 Haw. 650, 857 P.2d 600 (1993) (citation omitted), Friends' petition for declaratory judgment in the present case was brought as an original action under HRS § 632–1. Therefore, the circuit court was not required to defer to the DLU's determination on the potential environmental impact of the park project. The court could make its own independent findings regarding the salient facts of the instant case.

Accordingly, the correct standard under which this court must review the circuit court's finding in this case is the clearly erroneous standard of review. *Gadd v. Kelley*, 66 Haw. 431, 442, 667 P.2d 251, 259 (1983). "A [finding of fact] is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 116, 839 P.2d 10, 27–28, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citations omitted).

The circuit court's finding that the overall park project may have a significant environmental impact was not clearly erroneous. The City planned to turn Kailua Beach Park into one of seven "ocean recreation centers" on Oahu. The projected cost in July 1991 was between 1.5 and 2 million dollars. With all of the projected construction involved and the ultimate goal that the new park "be enjoyed by thousands rather than a limited number during the week and on weekends," the DLU could not

reasonably have determined that such a plan "will not have a significant ecological or environmental impact" on the special management area. Section 25–1.3(3) merely requires that the overall project *may* have a significant environmental impact. We believe that the circuit court was correct in finding that the overall park project may have such an impact and that such finding was not clearly erroneous.

Because the circuit court found that the park project of which the proposed demolition is a part may have a significant impact, the demolition is development under ROH § 25–1.3(3). Therefore, under the procedures prescribed in chapter 25, ROH, the director of the DLU was precluded from declaring the demolition exempt from the SMA use permitting process. Instead, the director of the DLU should have required the City to apply for a SMA use permit and adhere to the permitting process detailed in chapter 25. Accordingly, the circuit court correctly granted Friends' petition for declaratory relief and ordered that the City be required to apply for and obtain a SMA use permit before it undertakes any demolition of structures at Camp Kailua.

## III. **CONCLUSION**

Based on the foregoing, we affirm the order of the circuit court granting Friends' petition for declaratory relief.

*David B. Coburn* (*Karl K. Ichida* on the briefs), Deputies Corporation Counsel, for defendants–appellants.

*Thomas R. Grande* (*Cynthia Thielen* of the Law Offices of Cynthia Thielen, with him on the brief) of Davis & Levin for plaintiff–appellee.