**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000801
28-JUL-2020
10:09 AM**

NO. CAAP-17-0000801

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


JONATHAN NUEZCA, Petitioner-Appellant, v.
STATE OF HAWAIʻI, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(S.P.P. NO. 16-1-0008(2); CR. NO. 15-1-0285(2))


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, and Chan and Wadsworth, JJ.)

Petitioner-Appellant Jonathan Nuezca (**Nuezca**) appeals from the "Court's Findings of Fact, Conclusions of Law, and Order Denying Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody Filed on June 7, 2016" (**FOF/COL/Order**), entered on October 3, 2017, in the Circuit Court of the Second Circuit (**Circuit Court**).[1] Following an evidentiary hearing, the Circuit Court concluded that Nuezca had failed to present sufficient evidence to establish his claims of ineffective assistance of counsel and prosecutorial misconduct, and denied Nuezca's Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody (**Petition**).

On appeal, Nuezca challenges the Circuit Court's Findings of Fact (**FOF**) Nos. 27, 28, 29, 31, 33, 36, 38, 39, 40, and 41 and Conclusions of Law (**COL**) Nos. 8, 9, 10, 11, 12, and 13. Nuezca contends that the Circuit Court erred in ruling that he failed to establish his ineffective assistance claim, because he was not accurately advised by his trial counsel that pleading

---

[1] The Honorable Peter T. Cahill presided.

no contest to an aggravated felony would subject him to "mandatory and certain" deportation.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Nuezca's contentions as follows.

## I. RELEVANT BACKGROUND

The following FOFs, among others, are undisputed:

1. On May 1, 2015, in Cr. No. 15-1-0285(2), the Grand Jury of the Second Circuit indicted Nuezca on the following counts:

> Count One: Sexual Assault in the Third Degree [(**Sex Assault 3**)], in violation of Hawai[]i Revised Statutes ("HRS") § 707-732(1)(b);[2/]
>
> Count Two: [Sex Assault 3], in violation of HRS § 707-732(1)(c);
>
> Count Three: [Sex Assault 3], in violation of HRS § 707-732(1)(c);
>
> Count Four: [Sex Assault 3], in violation of HRS § 707-732(1)(c); and
>
> Count Five: [Sex Assault 3], in violation of HRS § 707-732(1)(c).

2. On March 11, 2015, Defendant Nuezca pled not guilty to all five counts against him at his Arraignment and Plea.

3. In the Arraignment and Plea hearing, the Court gave the immigration advisement required by HRS § 802E-4 to Nuezca.

---

[2/] HRS § 707-732(1)(b)(2014) provides:

> (1) A person commits the offense of sexual assault in the third degree if:
>
> . . . .
>
> (b) The person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person[.]

At the time of the indictment, HRS § 707-700 (2014) defined "sexual contact" as "any touching, other than acts of 'sexual penetration', of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts."

4.  [Trial counsel] represented Defendant Nuezca . . . .

5.  On August 11, 2015, Nuezca changed his plea from not guilty to no contest to Count One . . . .

6.  In the Change of Plea hearing, the Court gave Nuezca an immigration warning as required by HRS § 802E-2.

7.  The Court advised Nuezca of the potential immigration issues that may arise if he is not a citizen of the United States, including detention and removal, by changing his plea to no contest.

8.  During the hearing, Nuezca acknowledged that he had certain rights, including a speedy and public trial and the right to appeal anything that occurred up to the change of plea date, and that he gave up those rights.

9.  Nuezca also acknowledged that he faced a possible five-year term of imprisonment and $10,000 in fines, an extended term of imprisonment of ten-years and a term of probation of four-years with up to one year in jail.  A conviction in the offense to which [Nuezca] entered a No Contest Plea also required him to register as a sex offender for life.

10.  Nuezca acknowledged that he discussed all of the foregoing with his attorney and that he had no complaints about his attorney.

11.  Nuezca also signed a No Contest Plea form in open Court acknowledging the items contained in these [FOFs].

12.  As a result of his plea deal, Nuezca pled no contest to Count One . . . .  After sentencing pursuant to the plea deal, the Court dismissed Counts Two through Five . . . with prejudice.

13.  The Court found that Nuezca intelligently, knowingly, and voluntarily changed his plea of not guilty and entered a plea of no contest.

14.  On October 20, 2015, the Court sentenced Nuezca to five years' probation.  As a term and condition of probation the Court sentenced [Nuezca] to one year jail.

15. [O]n June 7, 2016, Nuezca file[d the Petition] in the instant case.

16.  Nuezca raised three grounds for relief in his Petition:

Ineffective assistance of counsel for being misinformed about the deportation consequences of his no contest plea, leading him to not believe the Court's immigration advisement, and not being advised about going to trial.

17. [Respondent-Appellee State of Hawaiʻi (**State**)] filed a Response to the Petition on August 22, 2016, and Nuezca filed a Reply on February 13, 2017.

18.  On October 31, 2016, the U.S. Board of Immigration Appeals issued a decision to vacate an immigration judge's decision to remove Nuezca from the United States.

> 19.  This court held an evidentiary hearing on
> Nuezca's . . . Petition on February 22, 2017.  Nuezca
> participated via Polycom as he remained in federal custody
> pending possible removal from the United States.  A Court
> certified interpreter assisted in the case to provide
> English-Ilokano translation.

(Footnote added and original footnote omitted.)

At the hearing on the Petition, Nuezca's trial counsel testified that in his practice, it is routine for him to determine if his client is a United States citizen, and he did so in Nuezca's case.  On June 4, 2015, within days of coming on the case, trial counsel learned that Nuezca had a permanent resident card.  "Right away, [trial counsel] told [Nuezca] that what he's charged with, five counts of sexual assault three, is a deportable offense."  Trial counsel informed Nuezca "[m]any times" that "there was a possibility that he would be deported"; he advised Nuezca "[m]any times" that "if he pled no contest, he would be -- could be deported"; and that "[Sex Assault 3] was a deportable offense."  Trial counsel also mentioned to Nuezca that because he had a permanent resident card, if Immigration and Customs Enforcement (**ICE**) put a hold on him, he should qualify for assistance from a federal public defender.  Trial counsel told Nuezca he "couldn't give him assurances that he would not be deported[,]" but also "tried to give him some hope, because there ha[d] been some cases where . . . people were not deported when they had their permanent residence card."  Trial counsel "told [Nuezca] many times, yes, this is a deportable offense, because he asked [trial counsel] every single time [trial counsel] visited him or talked to him on the phone.  And [trial counsel] said [he] hoped it didn't happen, but [Nuezca] certainly was aware of it."  "[P]ortions of this continuing discussion took place before the change of plea hearing . . . many, many times."

Trial counsel further testified:

> And what happened was, over the course of talking with
> the prosecutor's office, [the prosecutor] agreed finally to
> dismiss four of the Class C felonies. . . . [S]he dismissed
> four of the Class C felonies if [Nuezca] would plead to one
> Class C felony.  She was going to ask for five years of
> probation and a year in jail.
>
> . . . .
>
> . . . And when we came to sentencing, Judge Cahill
> granted the probation request but gave him a year, which was

4

the agreement.

> And we talked about this issue going into it, and he was fully aware of it. In fact, he decided to gamble on the consequences of whether he might get an ICE hold or, you know, spare himself from going to possibly a state prison.

Trial counsel explained, "It was a gamble because he wanted to go home, so he chose to enter the plea of no contest to one count involving his stepdaughter and basically rolled the dice on whether ICE would ever catch up with him."

When asked if he ever told Nuezca that "he would be deported," trial counsel testified: "I did not know to a hundred percent that he would be, no. There was a possibility that he would not be. In fact, my understanding was the immigration judge sided with him over in Honolulu recently."

When asked if he felt he "had an obligation to tell Mr. Nuezca that he would be deported," trial counsel responded:

> Well, that assumes that I knew what the immigration courts would do, and I did not at the time. I did tell him it was a deportable offense and if he got caught up in the system, he would need an immigration -- he would need the help. But having a residence card, he should be able to get a federal public defender to help with that. I definitely told him it was deportable.

Following testimony and argument, the Circuit Court orally denied the Petition. In the FOF/COL/Order, the Circuit Court further found and concluded, in relevant part:

> 20. Defendant Nuezca, his wife . . ., and [trial counsel] testified at the hearing.
>
> 21. The court finds [trial counsel] to be a credible witness and accepts his testimony.
>
> . . . .
>
> 27. The Court finds credible [trial counsel's] testimony that he advised Nuezca on numerous occasions that he faced the possibility of deportation.
>
> 28. [Trial counsel] also told Nuezca that because he had a permanent resident card, if Immigration and Customs Enforcement put a hold on Nuezca, he would qualify for assistance from a federal public defender.
>
> 29. [Trial counsel] told Nuezca that he could not give Nuezca assurances that he would not be deported, but also tried to give him some hope by telling him that some people were not deported when they had their permanent resident card.
>
> . . . .

31. [Trial counsel] requested an interpreter for the Change of Plea hearing just in case words were spoken too quickly or complex terms were used, and the Court furnished one for [Nuezca].

. . . .

33. Although [Nuezca] faced possible deportation, [trial counsel] testified that Nuezca accepted the plea deal because he wanted to return to his family and his job and sought to receive probation in a plea agreement.

34. [Trial counsel] further testified that he made efforts for a "better" deal, but the deputy prosecutor assigned to Nuezca's case would not enter into a plea agreement unless Nuezca pled to one of the class C felony counts, and in return, she agreed to a dismissal of the remaining four counts.

35. The Court followed the plea agreement and sentenced Nuezca to five years probation, including one year of prison.

36. Nuezca faced possible lengthy prison time if he chose to go to trial and the jury convicted him of all charged offenses. The Court finds credible the testimony of [trial counsel] that Nuezca decided to risk deportation with a shorter prison term or probation because of his family.

. . . .

38. The Court does not find credible either Mr. or Mrs. Nuezca's testimony that [Nuezca] had not been warned or advised by his lawyers that he would likely face removal.

39. The Court further finds that based on all the credible evidence, [Nuezca] had been advised and warned that if convicted he could face removal.

40. The Court further finds that Nuezca as a "green card" holder of recent arrival and facing actual removal now seeks to undo the benefits of the plea deal he knowingly, intelligently, and voluntarily entered into with the full advice of counsel. The Court further finds that based upon all credible evidence that [Nuezca] is motivated by current events and the desire to remain in the United States and not out of actual innocence.

41. The Court further finds that Nuezca failed to present any credible evidence that his [trial counsel's] representation was ineffective.

. . . .

**CONCLUSIONS OF LAW**

. . . .

8. . . . . Nuezca failed to establish factually and legally that his conviction under Hawaii law for [Sex Assault 3] make it practically certain that he shall be removed or deported.

9. [Trial counsel's] advice to Nuezca that [Sex Assault 3] made him subject to deportation or removal was not objectively unreasonable and within the standard required of a competent attorney, and thus Nuezca failed to

meet the first prong of the Strickland[ v. Washington, 466 U.S. 668, 687, reh. denied, 467 U.S. 1267 (1984) test].

10. . . . Nuezca did not suffer prejudice as required by the second prong of the Strickland test, because Nuezca faced a possible 25-year prison term, so he made the conscious decision to take his chances with deportation and enter into a plea agreement.

11. . . . [Trial counsel's] assistance to Nuezca was within the range of competence demanded of attorneys in criminal cases under [State v. ]Richie[, 88 Hawai'i 19, 960 P.2d 1227 (1998)].

12. . . . [Trial counsel] did not commit specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence under the first prong of the Richie test.

13. Because [trial counsel] did not commit any errors or omissions, there is no need to conduct the second prong of the Richie test.

14. . . . Nuezca failed to present sufficient evidence to establish his claims of ineffective assistance of counsel in his first and second grounds for relief.

15. . . . Nuezca failed to present any evidence to establish his claim of prosecutorial misconduct in his third ground for relief.

. . . .

## ORDER

The Court, having made the foregoing [FOFs] and [COLs], and concluding that Nuezca failed to present sufficient evidence to meet [h]is burden of proof to establish his claims of ineffective assistance of counsel and prosecutorial misconduct[,]

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the [Petition] is DENIED.

## II. DISCUSSION

Nuezca argues that his trial counsel was ineffective for failing to advise him that "he was facing mandatory and certain deportation from being convicted of an aggravated felony." Nuezca challenges numerous findings by the Circuit Court as to what Nuezca's trial counsel advised him regarding the immigration consequences of pleading no contest to one count of Sex Assault 3. Ultimately, the Circuit Court found that trial counsel's testimony was credible, and that trial counsel had advised Nuezca that he "could face removal" for a Sex Assault 3 conviction, and "[Sex Assault 3] made him subject to deportation or removal."

7

"A trial court's [findings of fact] are reviewed under the clearly erroneous standard.  A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." Dan v. State, 76 Hawaiʻi 423, 428, 879 P.2d 528, 533 (1994) (citing and quoting Hawaiʻi Thousand Friends v. City and County of Honolulu, 75 Haw. 237, 248, 858 P. 2d 726, 732, (1993)) (internal quotation marks omitted).

Here, there is evidence in the record to support the Circuit Court's findings of fact that are challenged by Nuezca, and based on our review of the record, we are not left with a definite and firm conviction that the Circuit Court made mistakes in these findings.  To the extent that Nuezca challenges the Circuit Court's findings regarding credibility, "it is within the province of the trial court to determine the credibility of a witness[.]"  Matter of Ishida-Waiakamilo Legacy Trust, 140 Hawaiʻi 69, 74, 398 P.3d 658, 663 (2017) (quoting In re Ishida-Waiakamilo Legacy Trust, 138 Hawaiʻi 98, 107, 377 P.3d 39, 48 (App. 2016)) (internal quotation marks omitted); see also State v. Jenkins, 93 Hawaiʻi 87, 101, 997 P.2d 13, 27 (2000) (quoting State v. Mattiello, 90 Hawaiʻi 255, 259, 978 P.2d 693, 697 (1999)).

We therefore conclude that the challenged findings were not clearly erroneous, and the evidence supports that trial counsel advised Nuezca that pleading no contest to Sex Assault 3 would subject him to deportation.  Nuezca argues that even if the Circuit Court's findings are upheld, his trial counsel's advice was deficient and constituted ineffective assistance.  He relies primarily on Padilla v. Kentucky, 559 U.S. 356 (2010), to support his claim.

In Padilla, the Supreme Court held that constitutionally competent counsel would have advised a defendant that his conviction for drug distribution made him subject to automatic deportation.  Id. at 360.  The Court stated:

> In the instant case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for [the defendant's] conviction.  See 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who

8

> at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance . . ., other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable"). [The defendant's] counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses. Instead, [the defendant's] counsel provided him false assurance that his conviction would not result in his removal from this country. This is not a hard case in which to find deficiency: The consequences of [the defendant's] plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect.

Id. at 368-69. In sum, the defendant's counsel erred in not recognizing that the defendant's plea would subject him to "presumptively mandatory" deportation, and advising him to the contrary "that his conviction would not result in his removal." Id.

The Court recognized that "[i]mmigration law can be complex, and it is a legal specialty of its own." Id. at 369. The Court observed:

> There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. . . . When the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

Id. (emphasis added) (footnote omitted). The Court concluded by stating: "[W]e now hold that counsel must inform her client whether his plea carries a risk of deportation." Id. at 374.

This case differs from Padilla in important respects. Here, Nuezca argues that Sex Assault 3 constitutes "sexual abuse of a minor," which he asserts "is clearly an aggravated felony" that triggered "mandatory" deportation under federal immigration law.[3/] However, he failed to establish that at the time of his no-contest plea, it was "truly clear" that Sex Assault 3

---

[3/] 8 U.S.C. § 1227(a)(2)(A)(iii) (2008) provides: "Any alien who is convicted of an aggravated felony at any time after admission is deportable." An "aggravated felony" includes "sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A).

9

constituted "sexual abuse of a minor," such that his removal was "presumptively mandatory" and his counsel was required to so advise him. Id. at 369.

Indeed, in Nuezca's subsequent removal proceedings, the Board of Immigration Appeals (**BIA**) ruled that the Department of Homeland Security (**DHS**) had not established that Nuezca's conviction for Sex Assault 3 constituted a conviction for sexual abuse of a minor. In re Nuezca, 2016 WL 8188641, at *2 (BIA Oct. 31, 2016) (unpublished) ("Given that Hawaii's definition of 'sexual contact' includes offenses which were committed 'through the clothing,' the respondent has . . . not been convicted of a categorical sexual abuse of a minor aggravated felony . . . ." (citing United States v. Martinez, 786 F.3d 1227, 1232 (9th Cir. 2015) (holding that, under Washington state law, third-degree child molestation did not categorically constitute "sexual abuse of a minor" because it "criminalize[d] touching over clothing as opposed to the generic offense's requirement of skin-to-skin contact"); and United States v. Castro, 607 F.3d 566, 570 (9th Cir. 2010) (holding that a California statute prohibiting lewd and lascivious acts on a child was categorically broader than the generic definition for sexual abuse of a minor because "[l]ewd touching [under the state statute] can occur through a victim's clothing and can involve any part of the victim's body"))). The BIA further ruled that the DHS had not established that Nuezca's Sex Assault 3 conviction constituted a conviction for a crime involving "moral turpitude."[4/] Id. Accordingly, the BIA: (1) sustained Nuezca's appeal and vacated "the Immigration Judge's decision to sustain the charges of removability"; and (2)

---

[4/]     8 U.S.C. § 1227(a)(2)(A)(i) (2008) provides:

Any alien who--

(I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and

(II) is convicted of a crime for which a sentence of one year or longer may be imposed,

is deportable.

"remand[ed] the record to the Immigration Judge for further proceedings," including "a renewed opportunity [for the DHS] to lodge additional charges of removability." Id. at *2-*3 (citing 8 C.F.R. § 1240.10(e) (2015)).

Nuezca points out that at the hearing on the Petition, trial counsel testified:  "It looked to me like it was an aggravated felony. . . .  It's a crime of moral turpitude as well."  Regardless, whether a conviction for Sex Assault 3 would trigger "mandatory" deportation at the time of Nuezca's plea was primarily a legal issue, and Nuezca failed to establish that such a consequence was "truly clear" as a matter of federal immigration law.  Padilla, 559 U.S. at 369.  In citing the BIA's 2016 decision in Nuezca's removal proceedings, we neither adopt nor reject its legal analysis, which is dependent in part on its reading of Hawaiʻi law.  We also recognize that the decision came after Nuezca's plea, and was thus not available when his trial counsel advised him regarding immigration consequences.  Nevertheless, the decision relies on pre-existing authorities, which, at the very least, undermine Nuezca's argument that Sex Assault 3 was "clearly an aggravated felony" that triggered "mandatory" deportation under federal immigration law.  Accordingly, on this record, we conclude that Nuezca failed to establish that pleading no-contest to Sex Assault 3 would subject him to presumptively mandatory deportation, such that his trial counsel was required to so advise him.

Under these circumstances, we also conclude that trial counsel was not ineffective in advising Nuezca regarding the immigration consequences of his plea.  "When the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences."  Padilla, 559 U.S. at 369.  Here, trial counsel advised Nuezca that pleading no contest to Sex Assault 3 would subject him to deportation, which was sufficient to warn Nuezca that the plea "carr[ied] a risk of adverse immigration consequences."  Id.  Thus, trial counsel satisfied Padilla, and on this record, Nuezca has not established "specific errors or

omissions reflecting counsel's lack of skill, judgment or diligence."[5] Richie, 88 Hawaiʻi at 39, 960 P.2d at 1247 (quoting State v. Fukusaku, 85 Hawaiʻi 462, 480, 946 P.2d 32, 50 (1997)). Accordingly, the Circuit Court did not err in ruling that Nuezca failed to establish his ineffective assistance claim.

### III. CONCLUSION

For the reasons stated above, we affirm the "Court's Findings of Fact, Conclusions of Law, and Order Denying Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody Filed on June 7, 2016," entered on October 3, 2017, in the Circuit Court of the Second Circuit.

DATED: Honolulu, Hawaiʻi, July 28, 2020.

On the briefs:

Matthew S. Kohm
for Petitioner-Appellant.

Richard K. Minatoya,
Deputy Prosecuting Attorney,
County of Maui,
for Respondent-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Derrick H.M. Chan
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge

---

[5] It appears that the Circuit Court analyzed Nuezca's ineffective assistance claim under both the Sixth Amendment of the United States Constitution, applying the federal standard announced in Strickland, 466 U.S. at 687, and Article I, section 14 of the Hawaiʻi Constitution, applying the state standard followed in Richie, 88 Hawaiʻi at 39, 960 P.2d 1227 at 1247. To the extent that COLs 3, 4, 7, 9, or 10 can be read as imposing the Strickland standard on the ineffective assistance claim brought under the Hawaiʻi Constitution, that conclusion is incorrect, but harmless, because the Circuit Court concluded that Nuezca's claim also failed the applicable Richie standard.