**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000478
14-SEP-2020
09:06 AM**

NO. CAAP-15-0000478

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


PROTECT AND PRESERVE KAHOMA AHUPUAʻA ASSOCIATION,
an unincorporated association,
MICHELE LINCOLN, MARK ALLEN, LINDA ALLEN,
and CONSTANCE B. SUTHERLAND,
Plaintiffs-Appellants/Appellants,

PATRICK AND NAOMI GUTH, Plaintiffs-Appellants/Appellees,
v.
MAUI PLANNING COMMISSION, COUNTY OF MAUI, and
STANFORD CARR DEVELOPMENT, LLC,
a domestic limited liability company,
Defendants-Appellees/Appellees


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 14-1-0616(1))


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Hiraoka and Wadsworth, JJ.)

### I. Introduction

This case arises from Defendant-Appellee Maui Planning Commission's (**the Commission**) oral approval of a Special Management Area (**SMA**) use permit application submitted by Defendant-Appellee Stanford Carr Development LLC (**Carr Development**).  In its SMA use permit application, Carr

Development sought permission to construct its proposed Kahoma Village 201-H Project on a vacant lot situated within the County of Maui's SMA.

Plaintiffs-Appellants Protect and Preserve Kahoma Ahupuaʻa Association, Michele Lincoln, Mark Allen, Linda Allen, and Constance B. Sutherland (**collectively the PPKAA**), an environmental organization whose members largely consist of adjoining landowners, sought to intervene as a party in the Commission's SMA permit application proceeding in order to address potential environmental and aesthetic impacts of the proposed project.  The Commission denied PPKAA's petition to intervene, and subsequently orally approved Carr Development's SMA permit application.  PPKAA eventually appealed the Commission's decision to the Circuit Court of the Second Circuit (**circuit court**).[1]

In this secondary appeal, PPKAA appeals from the "Findings of Fact, Conclusions of Law, Decision and Order Denying Appeal" (**Order Denying Appeal**) and Final Judgment (**Judgment**) both entered on June 19, 2015, in favor of the Commission, Defendant-Appellee Maui County, and Carr Development, by the circuit court. In its Order Denying Appeal and Judgment, the circuit court affirmed: (1) the Commission's oral denial of PPKAA's petition to intervene in Carr Development's SMA use permit application; (2) the Commission's subsequent oral approval of Carr Development's SMA use permit; and (3) the Commission's "Findings of Fact, Conclusions of Law, and Decision and Order Relating to Protect and Preserve Kahoma Ahupuaʻa Association, Michele Lincoln, Mark and Linda Allen, Patrick and Naomi Guth, and Constance B. Sutherland's Petition to Intervene" (**Order Denying Petition**) dated September 23, 2014.

On appeal, PPKAA contends that the circuit court erred in its Order Denying Appeal because: (1) PPKAA had demonstrated injury-in-fact standing as required to merit intervenor status;

---

[1]  The Honorable Rhonda I.L. Loo presided.

(2) PPKAA was entitled to intervene as a matter of right; (3) denying permissive intervention to PPKAA constituted an abuse of discretion by the Commission; (4) the Commission engaged in unlawful *de facto* rule making on intervention and its intervention rules were invalid as written and applied; (5) the Commission violated PPKAA members' due process rights, and; (6) the Commission failed to find the project would be consistent with the General Plan and Community Plan before approving the SMA use permit.

For the reasons set forth below, we vacate the Order Denying Appeal and the Judgment entered by the circuit court. We remand this case to the Maui Planning Commission for further proceedings.

## II. Background

On September 27, 2012, the Commission received Carr Development's SMA use permit application for its proposed Kahoma Village 201-H Project (**the Project**) to be located on approximately 21.6 acres of a 24.354-acre lot in Lahaina, Maui. The Project proposes to develop a mix of affordable and market units and housing types on undeveloped and vacant land owned by the Harry and Jeanette Weinberg Foundation, Inc. to address the need for housing in the County of Maui. The Project would include the development of approximately 203 housing units, parking, landscaping, roadways, utility improvements, and 1.75 acres of residential parks. The Project site is located within the State Land Use "Urban" district and is within the County of Maui's SMA, the area along the shoreline protected to ensure the preservation and restoration of the coastal zone of the State of Hawaiʻi.

On November 6, 2012, Carr Development published for circulation in Maui News, a "Notice of Application" and location map notifying the general public of Carr Development's intent to file its SMA use permit application with the County of Maui. On February 7, 2014, the Maui County Council adopted County Council

3

Resolution 14-14 and approved the Project pursuant to Hawaii Revised Statutes (**HRS**) Chapter 201H-38 relating to affordable housing projects.  Resolution 14-14 exempted the Project from certain provisions of the Maui County Code, including, *inter alia*, an exemption that permitted the Project to proceed without obtaining a community plan amendment.

On May 19, 2014, Carr Development sent a subsequent notice to all owners and record lessees within 500 feet of the project, including members of PPKAA,[2] describing the Project and notifying them of the scheduled hearing date, time, and place of the public hearing on Carr Development's SMA use permit application.  On June 5, 2014, PPKAA filed their petition to intervene in Carr Development's SMA permit application.  The petition states that PPKAA is an unincorporated organization whose mission is to preserve, protect, and restore the natural and cultural environment of the Kahoma ahupuaʻa, including the Alamihi cultural area.  Many of PPKAA's officers, members, and supporters are homeowners or lessees within the Kahoma ahupuaʻa and reside within 500 feet of the proposed project site.

In their petition, PPKAA asserts that the proposed Project would adversely affect their group as adjacent landowners because it would diminish their use and enjoyment of their properties, decrease their properties' sale and rental value, and would have adverse impacts on the protected resources within the Coastal Zone Management Area.  The petition further asserts that the proposed Project would threaten a variety of environmental and aesthetic interests protected under the Coastal Zone Management Act (**CZMA**) if not properly addressed.  On June 13, 2014, Carr Development filed its motion in opposition to the petition, challenging the petition on the basis that it failed to

---

[2]  The notice of the scheduled public hearing on Carr Development's SMA use permit application was sent to PPKAA members Mark and Linda Allen, Patrick and Naomi Guth, and Constance Sutherland, all of whom are owners or lessees that reside within 500 feet of the Project site.

meet the intervenor standing requirements set forth in Maui Planning Commission Rules of Practice and Procedure (**MPC Rule**) 12-201-41(b) and (d) (2010),[3] pertaining to intervention as a matter of right, and permissive intervention, respectively.

On June 24, 2014, the Commission held a public hearing on, *inter alia*, PPKAA's petition to intervene, and Carr Development's SMA permit application.  At the hearing, members of the general public, including PPKAA members Mark Allen, Naomi Guth, Constance Sutherland, and Michele Lincoln, presented public testimony on their opinions of the Project.  Later in the public hearing, Michele Lincoln, acting on behalf of the PPKAA, and Carr Development's counsel presented oral arguments on PPKAA's petition to intervene.  After consideration of the arguments presented by both parties, the Commission denied the petition by a vote of five to one, and proceeded to orally approve Carr Development's SMA permit application for the Project.

---

[3]  MPC Rule 12-201-41 provides, in relevant part:

. . . .

> (b) All persons who have a property interest in land subject to commission action, who lawfully reside on said land, or can demonstrate that they will be so directly and immediately affected by the matter before the commission that their interest in the proceeding is clearly distinguishable from that of the general public shall be admitted as parties upon timely application for intervention.

. . . .

> (d) Leave to intervene shall be freely granted, provided that the commission or its hearing officer, if one is appointed, may deny an application to intervene when in the commission's or hearing officer's sound discretion it appears that:
> (1)  The position or interest of the applicant for intervention is substantially the same as a party already admitted to the proceeding;
> (2)  The admission of additional parties will render the proceedings inefficient and unmanageable; or
> (3)  The intervention will not aid in development of a full record and will overly broaden issues.

On July 7, 2014, PPKAA filed their "Objection to Denial of Petition to Intervene", arguing that the Commission "has adopted a practice of always denying complete Petitions to Intervene claiming that all petitioners' interests are not distinguishable from the general public."  In their Objection, PPKAA asserted that the Commission's consistent denial of petitions to intervene on this basis amounted to the enforcement of "a new rule regarding those who have standing to intervene in SMA permit application proceedings" that was promulgated without following the rule making procedures under HRS chapter 91.  The Commission considered PPKAA's Objection at its September 23, 2014 meeting, where it ultimately rested on the initial decision to deny PPKAA's petition.  The Commission then proceeded to adopt the Order Denying Petition.

On October 23, 2014, PPKAA filed their Notice of Appeal in the circuit court, challenging the Commission's oral denial of PPKAA's petition, oral approval of Carr Development's SMA use permit application, and the Order Denying Petition.  On April 30, 2015, the circuit court heard oral arguments at which it addressed PPKAA's points of error.  On June 19, 2015, the circuit court entered its Order Denying Appeal and Judgment, concluding in relevant part that: the Commission had properly considered and applied MPC Rule 12-201-41(b) in determining that PPKAA had failed to establish their standing to intervene as a matter of right; the Commission did not abuse its discretion in determining that PPKAA's petition did not warrant permissive intervention as allowed under MPC Rule 12-201-41(d); the Commission's decision to deny the petition was not arbitrary, capricious or an abuse or clearly unwarranted exercise of discretion; PPKAA's due process rights were not violated because they were afforded notice and an opportunity to be heard on the petition and were not subject to the usual three-minute limitation imposed on oral testimony from individuals; the Commission's determination that the Project was

6

exempted from the General Plan was not clearly erroneous; and the Commission did not improperly engage in *de facto* rule making or fail to promulgate rules in compliance with HRS Chapter 91. Accordingly, the circuit court affirmed the Commission's oral denial of PPKAA's petition to intervene, the Commission's oral approval of Carr Development's SMA permit application, and the Order Denying Petition.  This appeal follows.

### III. Standards of Review

### A.    Administrative Agency Decisions-Secondary Appeals

In the instant appeal, we review the decision made by the circuit court upon its review of the Commission's decision to deny PPKAA's petition to intervene.

> Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal.  The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) (1993) to the agency's decision.

Save Diamond Head Waters LLC v. Hans Hedemann Surf, Inc., 121 Hawaiʻi 16, 24, 211 P.3d 74, 82 (2009) (quoting Citizens Against Reckless Dev. v. Zoning Bd. of Appeals, 114 Hawaiʻi 184, 193, 159 P.3d 143, 153 (2007)).  HRS § 91-14(g) (2012) provides:

> (g)  Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> (1)   In violation of constitutional or statutory provisions;
> (2)   In excess of the statutory authority or jurisdiction of the agency;
> (3)   Made upon unlawful procedure;
> (4)   Affected by other error of law;
> (5)   Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> (6)   Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Accordingly, pursuant to HRS § 91-14(g), an agency's "conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3);

findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)."  Sierra Club v. Off. of Plan., 109 Hawaiʻi 411, 414, 126 P.3d 1098, 1101 (2006) (citation omitted).

We also note that an agency's interpretation of its own rules is entitled to deference unless it is plainly erroneous or inconsistent with the underlying legislative purpose.  In re Waiola O Molokai, Inc., 103 Hawaiʻi 401, 425, 83 P.3d 664, 688 (2004); Lee v. Elbaum, 77 Hawaiʻi 446, 457, 887 P.2d 656, 667 (App. 1993).  However, restrictive interpretations of standing requirements imposed by an agency are not entitled to deference and may be reviewed *de novo* on appeal.  See Pub. Access Shoreline Hawaii v. Hawaiʻi Cty. Plan. Comm'n, 79 Hawaiʻi 425, 434, 903 P.2d 1246, 1255 (1995) (PASH).

**B.   Constitutional Law**

"We review questions of constitutional law *de novo*, under the right/wrong standard."  Jou v. Dai-Tokyo Royal St. Ins. Co., 116 Hawaiʻi 159, 164-65, 172 P.3d 471, 476-77 (2007) (quoting Onaka v. Onaka, 112 Hawaiʻi 374, 378, 146 P.3d 89, 93 (2006)) (internal quotation marks omitted).

**IV. Discussion**

**A.   The Commission restrictively interpreted its standing requirements in denying PPKAA's petition to intervene as a matter of right.**

PPKAA contends that the Commission restrictively and improperly interpreted its standing requirements as set forth in MPC Rule 12-201-41(b), and thus abused its discretion in denying PPKAA's petition to intervene as a matter of right.  We agree.

The MPC Rules provide for formal intervention to Commission proceedings under MPC Rules §§ 12-201-39 to -46.  In particular, MPC Rule 12-201-41(b) provides:

> All persons who have a property interest in land subject to commission action, who lawfully reside on said land, or can demonstrate they will be so directly and immediately affected by the matter before the commission that their interest in the proceeding is clearly distinguishable from that of the general public shall be admitted as parties upon timely application for intervention.

In its Order Denying Petition, the Commission concluded, and PPKAA does not contest, that PPKAA does not have a property interest in the land that is subject to the Commission's action and did not lawfully reside on said land.  Accordingly, under MPC Rule 12-201-41(b), PPKAA would qualify to have standing to intervene as a matter of right only if they could demonstrate that they would "be so directly and immediately affected by the matter before the commission that their interest in the proceeding is clearly distinguishable from that of the general public."

"Standing is concerned with whether the parties have the right to bring suit," or as in this case, whether PPKAA has the right to intervene in Carr Development's SMA permit application.  See Sierra Club v. Dep't of Transp., 115 Hawaiʻi 299, 318, 167 P.3d 292, 311 (2007) (internal quotation marks omitted) (quoting Pele Def. Fund v. Puna Geothermal Venture, 77 Hawaiʻi 64, 67, 881 P.2d 1210, 1213 (1994)).  In order to establish standing to intervene in an administrative proceeding, plaintiffs must demonstrate an "injury-in-fact," which requires them to "have suffered an actual or threatened injury; the injury must be fairly traceable to the defendant's actions; and a favorable decision would likely provide relief for the plaintiff's injury."  In re Application of Maui Elec. Co., 141 Hawaiʻi 249, 270, 408 P.3d 1, 22 (2017) (MECO) (citation omitted).  "Environmental plaintiffs must meet this three-part standing test but need not assert an injury that is different in kind from an injury to the public generally."  Id. (citation omitted).  This less rigorous standing requirement that applies in environmental cases draws support from the Hawaiʻi Constitution, article XI, section 9.  Dep't of Transp., 115 Hawaiʻi at 320, 167 P.3d at 313.

"The injury prong of the standing inquiry requires an assertion of a judicially-cognizable injury, that is, a harm to

9

some legally-protected interest." <u>Id.</u> at 321, 167 P.3d at 314 (citations omitted). Although the Supreme Court of Hawaiʻi has acknowledged a variety of recreational and aesthetic interests that, if injured, can form the basis for standing in environmental cases, the ultimate inquiry depends on injury to the plaintiffs themselves, not the environment. <u>Id.</u> at 321-322, 167 P.3d at 314-315. Accordingly, even under our less rigorous standing requirements in environmental cases, although a plaintiff's injury or threatened injury need not be different in kind from an injury to the public generally, a plaintiff still must demonstrate that he has suffered an injury-in-fact. <u>See</u> <u>id.</u>; <u>see also</u> <u>Akau v. Olohana Corp.</u>, 65 Haw. 383, 388-390, 652 P.2d 1130, 1134-1135 (1982) (holding "that a member of the public has standing to sue to enforce the rights of the public even though his injury is not different in kind from the public's generally, if he can show that he has suffered an injury in fact," or "some injury to a recognized interest such as economic or aesthetic, and is himself among the injured and not merely airing a political or intellectual grievance").

Here, in consideration of PPKAA's petition, the Commission made conclusions of law pertaining to PPKAA's right to intervene as a matter of right in Carr Development's SMA application, including the following:

> 7. Based on the record before it, evidence presented, and the findings set forth above, the Commission concludes that <u>the concerns [PPKAA] have raised are all concerns of the general public</u>, which the Commission is obligated to consider pursuant to the aforementioned rules and laws prior to making a decision on the Application.
>
> 8. Based on the record before it, evidence presented, and the findings set forth above, the Commission concludes that the [PPKAA] have failed to demonstrate that they will be so directly and immediately affected by the matter before the Commission <u>that their interests are clearly distinguishable from that of the general public</u>.
>
> 9. Based on the record before it, evidence presented, and the findings set forth above, the Commission concludes that [PPKAA] <u>have not met the burden of showing an actual or threatened injury traceable to [Carr Development's] actions or showing</u>

10

<u>how a favorable decision would provide relief for such injury</u>. []

(Emphases added).  In its Order Denying Appeal, the circuit court agreed with the Commission, and concluded that the Commission properly considered and applied MPC Rule 12-201-41(b) in its determination that PPKAA failed to meet their burden of proof with regard to standing, and that "the evidence before the Commission lacked sufficient specificity to establish [PPKAA's] interests are clearly distinguishable from that of the general public."

However, the Commission's findings and conclusions reflect that the Commission interpreted MPC Rule 12-201-41(b) in a restrictive manner in denying PPKAA's petition, which may be reviewed *de novo*.  PASH, 79 Hawaiʻi at 434, 903 P.2d at 1255.  In its findings, the Commission notes that PPKAA seeks to protect the same interests protected by the CZMA and the Hawaiʻi State Constitution, including, *inter alia*, environmental interests such as public access to beaches and various cultural and environmental resources.  The Commission notes that PPKAA "do not specify which of the enumerated concerns will affect them 'in a manner different from the general public[,]'" and that the petition instead only states that their members are plainly among the injured.  The Commission further noted in its findings that the concerns that PPKAA members articulated at the hearing are concerns the Commission is required to consider under the CZMA.  Such findings and conclusions emphasize the fact that the PPKAA did not allege an injury that is different in kind from an injury to the public generally or involve matters that the Commission is already required to consider under the CZMA objectives and policies.

However, as previously noted, the fact that PPKAA's concerns are similar to those of the general public is not determinative of the inquiry on standing, as environmental plaintiffs need not assert an injury that is different in kind

11

from the public so long as they can demonstrate an injury-in-fact to themselves.  See MECO, 141 Hawaiʻi at 270, 408 P.3d at 22. Similarly, the Commission's obligation to comply with CZMA statutory purposes, objectives, and policies cannot be used as a basis to deny PPKAA's petition to intervene, as it is immaterial in determining whether PPKAA is entitled to intervention as a matter of right pursuant to MPC Rule 12-201-41(b).  So long as PPKAA could demonstrate in the petition an injury-in-fact such that they would be "so directly and immediately affected by the matter before the commission that their interest in the proceeding is clearly distinguishable from that of the general public," PPKAA would be entitled to intervene in Carr Development's SMA application as a matter of right.[4]  See Maui P. Comm. R. § 12-201-41(b).

          Here, PPKAA sufficiently demonstrated a threatened injury-in-fact, in that they established a threatened environmental injury to PPKAA traceable to Carr Development's SMA permit application, and that a favorable decision by the Commission would provide relief to PPKAA members.  "A threatened injury under the traditional injury-in-fact test may be shown based on direct personal interests in the site of a project coupled with concerns of actual injury should the project

---

    [4]  As part of their fourth point of error, PPKAA contends that MPC Rule 12-201-41(b) is invalid as written insofar as it requires petitioners to demonstrate interests "clearly distinguishable" from that of the general public and thus conflicts with our settled injury-in-fact case law, which, as discussed above, does not require environmental plaintiffs to assert an injury that is different in kind from an injury to the public generally.  See MECO, 141 Hawaiʻi at 270, 408 P.3d at 22.

    We note, however, that the Hawaiʻi Supreme Court has addressed a similar standing rule in PASH, and while not explicitly ruling on its validity, has treated the rule as raising an issue of restrictive application of standing requirements.  See PASH, 79 Hawaiʻi at 434, 903 P.2d at 1255.  Here, the MPC restrictively interpreted its standing requirements in denying PPKAA's petition to intervene, and thus is owed no deference to its determination. See id. (noting that the Hawaiʻi Planning Commission's decision to deny petitioner standing to participate in a contested case hearing because "asserted interests were 'substantially similar' to those of the general public[,]" was a restrictive interpretation of the commission's standing requirements that is not entitled to deference).

go forward without adequate environmental review." Dep't of Transp., 115 Hawaiʻi at 329, 167 P.3d at 322. Applied here, the record reflects that those involved with PPKAA have demonstrated both a direct personal interest in the Project, and have identified potential environmental injury to themselves.

In regard to whether PPKAA members have a direct personal interest in the Project site, the Supreme Court of Hawaiʻi has recognized environmental and aesthetic interests, such as those articulated by PPKAA, to be "personal" and "special" to adjacent landowners of a project site. See Mahuiki v. Planning Commission, 65 Haw. 506, 515, 654 P.2d 874, 880 (1982) (holding that environmental and aesthetic interests were "special" and "personal" to adjacent landowners, as a "decision to permit the construction of multi-family housing units on undeveloped land in the [SMA] could only have an adverse effect on their environment" (emphasis added)).

Here, PPKAA set forth in the petition a number of interests that they contend the Project would injure if allowed to proceed as planned, including: (1) the use of the north side of Kenui Street for parking access to Puʻunoa and Mala beaches; (2) access to a full six-acre community park and open space as provided in the county community plan; (3) trees in the coastal zone that provide critical habitat for listed endangered species and shade; (4) protection from adverse effects of wastewater, drainage and runoff impacts upon coastal waters off of Puʻunoa and Mala beaches; (5) the Project's potential impact on the use of fresh water resources; (6) enjoyment of natural and manmade historic and prehistoric cultural resources located within the Project area; (7) proper investigation into the presence of Hawaiian burials in the Project area; (8) proper planning and consideration of adverse traffic impacts; (9) protection of scenic and open space resources; and (10) potential adverse impacts related to the Tsunami Inundation Zone because further development would contribute to emergency evacuation issues that

will cause harm to the existing community.  As articulated in the petition, and summarized above, we recognize that not all of the concerns asserted by PPKAA identify an actual or threatened injury to PPKAA members.

However, PPKAA did sufficiently assert threatened injuries-in-fact to PPKAA members in various ways.  In the introductory section of the petition, PPKAA specifically asserted:

> [A]s adjoining and nearby property owners, [we] will be directly and immediately affected by the Commission's decision and therefore have a right to intervene.  The proposed development, as currently planned, will adversely affect the [PPKAA] because it will diminish [our] use and enjoyment of [our] properties.  It will also decrease the sale and rental value of [our] properties.  [The project] will have adverse impacts on protected resources within the Coastal Zone Management Area as will be described in more detail below.

(Emphases added).  The petitioners' asserted threatened injuries were also more particularly specified in the petition and at the June 24, 2014 public hearing where members of the PPKAA submitted public testimony about their concerns over the Project.  As the commission observed in its findings, which are unchallenged, Mark Allen testified that he was concerned that the Project would increase storm water runoff entering the ditch that borders the southern end of his property.  Naomi Guth testified that the proposed Project would be situated in the last open space in all of Front Street, and thus suggested that a park should be located on the Project site and that the area be kept as an open space.  The Commission's findings and Constance Sutherland's testimony set forth her concerns about increased traffic that the Project may cause within her cul-de-sac neighborhood and the lack of parking for any additional cars.  Likewise, in the Petition, the PPKAA asserts that "[l]ocal residents currently use the unpaved portion of the north side of Kenui Street to access Puunoa (Baby) Beach and Mala Beach," and that "[t]he Project will impact access for beach parking and will directly impact the ability of public access to the shoreline."  PPKAA also articulated concerns about

adverse impacts in the tsunami evacuation zone that "the additional units [proposed in the Project] will contribute to emergency evacuation issues that will cause eminent [sic] harm to the existing community and the residents of the development." The Petition also further asserted that the CZMA "protects more than simply 'public views' which are of areas 'to and along the shoreline.'  The CZMA more broadly protects 'the quality of coastal scenic and open space resources' and 'visual' resources within the coastal zone."

Taken together, such concerns are not unlike those that have been previously recognized as sufficient to establish a judicially-cognizable injury.  See e.g., MECO, 141 Hawaiʻi at 270, 408 P.3d at 22 (holding that appellant group members articulated a threatened injury sufficient to establish standing with their concerns of potential health effects from power plant operations); Citizens for Prot. of North Kohala Coastline, 91 Hawaii 94, 101, 979 P.2d 1120, 1127 (1999) (holding that citizen group established "an injury in fact sufficient to constitute standing to participate in a declaratory judgment action" where members resided "in close proximity" to proposed project site and were "long time and frequent users" of the subject coastline, and injury to members' quality of life is threatened); Pele Def. Fund, 77 Hawaiʻi at 70, 881 P.2d at 1216 (holding that appellant group had demonstrated an injury-in-fact based on its assertion of "potential harm including diminished property values, deterioration of air quality, odor nuisance, and possible physical injury resulting from the permitted operations" (internal quotation marks omitted)); Akau, 65 Haw. at 390, 652 P.2d at 1135 (recognizing that appellant group's allegation that they were prevented from using a public right-of-way resulting in difficulty in getting to the beach thus hampering their use and enjoyment of it and possibly preventing or discouraging use in some instances established an injury-in-fact).

Accordingly, the Commission should have recognized that PPKAA members' direct personal environmental and aesthetic interests, including those of adjacent landowners, coupled with their articulated concerns of potential actual injury from the Project, sufficiently established a threatened injury that is fairly traceable to Carr Development's SMA permit application, and that a favorable decision by the Commission would have provided PPKAA relief from such injury, such that PPKAA had standing. See Dep't of Transp., 115 Hawaiʻi at 329, 167 P.3d at 322. Instead, the Commission interpreted its rules in an overly restrictive manner by denying PPKAA's petition on the basis "that the concerns [PPKAA] have raised are all concerns of the general public, which the Commission is obligated to consider." Such restrictive interpretation of its own standing requirements is not entitled to deference. See PASH, 79 Hawaiʻi at 434, 903 P.2d at 1255 (holding that Hawaiʻi Planning Commission's denial of standing to appellant group on the basis that its asserted interests were "substantially similar" to those of the public was a restrictive interpretation of the commission's standing requirements not entitled to deference).

The Hawaiʻi Supreme Court has expressed that "the appellate courts of this state have generally recognized public interest concerns that warrant the lowering of standing barriers in cases pertaining to environmental concerns." Dep't of Transp., 115 Hawaiʻi at 320, 167 P.3d at 313 (ellipses and citations omitted). As such, "where the interests at stake are in the realm of environmental concerns, we have not been inclined to foreclose challenges to administrative determinations through restrictive applications of standing requirements." MECO, 141 Hawaiʻi at 270, 408 P.3d at 22 (citations, internal quotation marks, and brackets omitted).

We thus conclude that PPKAA, having sufficiently established an injury-in-fact, demonstrated that they have been so directly and immediately affected by the matter before the Commission that they are entitled to intervene as a matter of

16

right in Carr Development's SMA permit application.  Accordingly, Carr Development's SMA use permit was granted pursuant to flawed procedures, that effectively curtailed PPKAA from developing a complete record, and is void.  See PASH, 79 Hawaiʻi at 429, 903 P.2d at 1250.  As such, the circuit court erred in concluding that the Commission properly applied MPC Rule 12-201-41(b), and in affirming the Commission's: (1) oral denial of PPKAA's petition to intervene; (2) subsequent oral approval of Carr Development's SMA permit, and; (3) the Order Denying Petition.

Because we conclude that PPKAA demonstrated that they had standing to intervene in Carr Development's SMA use permit application as a matter of right, we need not reach PPKAA's third and fourth points of error pertaining to the Commission's denial of permissive intervention to PPKAA, and the Commission's alleged *de facto* rule making.

**B.**    **PPKAA was denied procedural due process to protect their right to a clean and healthful environment under article XI, section 9, as defined under the CZMA.**

We next consider PPKAA's contention that they were denied procedural due process.  On appeal, PPKAA asserts they were "unconstitutionally deprived of a meaningful time and place to protect their interest in the Commission proceedings," which they attribute, in part, to the Commission's procedures pertaining to petitions to intervene that they contend impaired PPKAA's ability to establish a record on critical issues.  While we have already concluded that PPKAA has established their standing to intervene in the SMA permit application proceedings as a matter of right, we further conclude that in light of the Hawaiʻi Supreme Court's holdings in MECO and In re Hawaiʻi Elec. Light Co., 145 Hawaiʻi 1, 445 P.3d 673 (2019) (HELCO), procedural due process additionally required that PPKAA be afforded a contested case hearing.

17

It has been long recognized that "'constitutional due process protections mandate a hearing whenever the claimant seeks to protect a "property interest," in other words, a benefit to which the claimant is legitimately entitled.'"  MECO, 141 Hawai‘i at 260, 408 P.3d at 12 (brackets omitted) (quoting Pele Def. Fund, 77 Hawai‘i at 68, 881 P.2d at 1214).  In determining claims of a due process right to a hearing, we apply a two step analysis: "(1) is the particular interest which claimant seeks to protect by a hearing 'property' within the meaning of the due process clauses of the federal and state constitutions, and (2) if the interest is 'property,' what specific procedures are required to protect it."  Id. (citaton omitted).

### i.  PPKAA has asserted a constitutionally protected property interest to a clean and healthful environment as defined by the CZMA

As explained by the Hawai‘i Supreme Court, "[t]he right to a clean and healthful environment is a substantive right guaranteed to each person by article XI, section 9 of the Hawai‘i Constitution."  Id., at 260-61, 408 P.3d at 12-13 (internal quotation marks and citations omitted).  The Supreme Court further noted that "[a]lthough a person's right to a clean and healthful environment is vested pursuant to article XI, section 9, the right is defined by existing law relating to environmental quality."  Id. at 261, 408 P.3d at 13.  "Accordingly, the parameters of the property interest asserted by [petitioners] under article XI, section 9 is defined in reference to laws related to environmental quality."  Id. (citation omitted).

In their petition to intervene, in which they requested a contested case hearing, PPKAA sought to protect a number of environmental and aesthetic interests that are protected under the CZMA, HRS Chapter 205A, explaining that: "[PPKAA] is an unincorporated organization dedicated to preserving, protecting and restoring the natural and cultural environment of the Kahoma ahupua‘a including the Alamihi cultural area[,]" and that "[t]he interests in [sic] which [PPKAA] seek to protect are the same

interests protected by the [CZMA]. . . . and the Hawaii State
Constitution."  In this sense, PPKAA asserted a right to a clean
and healthful environment in this case as defined by the CZMA,
HRS Chapter 205A, which includes the duties and operation of the
Commission in regulating the SMA use permit procedure and
requirements.

We next consider whether the CZMA is a law relating to
environmental quality within the meaning of article XI, section 9
of the Hawaiʻi Constitution.  The CZMA was enacted by the
Legislature in order to provide for effective management,
beneficial use, protection, and development of Hawaii's coastal
zones.  1977 Haw. Sess. Laws Act 188, § 1 at 396.  As explicitly
stated in HRS § 205A-21 (2007),

> The legislature finds that, special controls on developments
> within an area along the shoreline are necessary to avoid
> permanent losses of valuable resources and the foreclosure
> of management options, and to ensure that adequate access,
> by dedication or other means, to public owned or used
> beaches, recreation areas, and natural reserves is provided.
> The legislature finds and declares that it is the state
> policy to preserve, protect, and where possible, to restore
> the natural resources of the coastal zone of Hawaii.

(Emphasis added).  "The implementation of this policy has been
delegated in large part to the counties, and they are responsible
for the administration of the [SMA] use permit procedure and
requirements."  Mahuiki, 65 Haw. at 517, 654 P.2d at 881.  HRS
§ 205A-2 also sets forth the objectives and policies of the CZMA,
many of which include consideration of the interests that PPKAA
seeks to address in their petition.  These provisions of the CZMA
expressly require the designated authorities to consider issues
relating to the preservation and conservation of natural
resources in the SMA in their decision making.

Thus, the CZMA is a law relating to environmental
quality that defines the right to a clean and healthful
environment under article XI, section 9, because it requires that
express consideration be given to the environmental interests
covered in the policies and objectives of the CZMA in the
decision-making of the designated authorities.  See HELCO, 145

19

Hawaiʻi at 16-17, 445 P.3d at 688-89; MECO, 141 Hawaiʻi at 261-265, 408 P.3d at 13-17 (holding that HRS Chapter 269 "is a law relating to environmental quality that defines the right to a clean and healthful environment under article XI, section 9 by providing that express consideration be given to reduction of greenhouse gas emissions in the decision-making of the [Public Utilities Commission]"); Cty. of Hawaii v. Ala Loop Homeowners, 123 Hawaiʻi 391, 409, 235 P.3d 1103, 1121 (2010) (holding that HRS Chapter 205 is a law relating to environmental quality within the meaning of article XI, section 9 because it is a law relating to the conservation, protection, and enhancement of natural resources and it requires consideration of issues relating to the preservation or conservation of natural resources), abrogated on other grounds by Tax Found. v. State, 144 Hawaiʻi 175, 439 P.3d 127 (2019).

### ii.  A contested case was required.

Having determined that PPKAA demonstrated a protected property interest in a clean and healthful environment as defined by the CZMA, "we next consider what procedures due process requires in this case[.]"  MECO, 141 Hawaiʻi at 265, 408 P.3d at 17.

> When determining the procedures required to comply with constitutional due process, we consider the following three factors: "(1) the private interest which will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional procedural safeguards would entail."

HELCO, 145 Hawaiʻi at 17, 445 P.3d at 689 (quoting Sandy Beach Def. Fund v. City Council Cty. of Honolulu, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989).

As to the first factor, the private interest affected here is PPKAA's right to a clean and healthful environment, which includes the right that explicit consideration be given to many of the objectives and polices of the CZMA that PPKAA asserted in their petition to intervene, and as provided for in HRS § 205A-2.

20

As previously discussed, Carr Development's SMA permit application involves the construction of a significant housing development within the SMA.  Because the Commission's determination on Carr Development's SMA permit application requires consideration of the Project's potential effect on the natural resources protected under the CZMA, PPKAA's right to a clean and healthful environment, as defined by the CZMA, was directly affected by the Commission's oral approval of Carr Development's SMA permit application.  See id.

As to the second factor, we conclude that the risk of erroneous deprivation of PPKAA's right to a clean and healthful environment is high absent the protections provided by a contested case hearing.  As asserted by the PPKAA in their petition to intervene, the Project could have adverse environmental and aesthetic impacts to the SMA, which PPKAA was not allowed to address because the Commission had denied their petition to intervene.  Additionally, there were no other proceedings where PPKAA was given a meaningful opportunity to be heard concerning Carr Development's SMA permit application, as it was orally approved after the Commission had denied PPKAA's petition to intervene at the June 24, 2014 public hearing.  See HELCO, 145 Hawaiʻi at 17, 445 P.3d at 689; MECO, 141 Hawaiʻi at 266, 408 P.3d at 18.

Finally, as to the third factor regarding the governmental interest, we conclude that the burden of affording PPKAA a contested case hearing is slight because the Commission was already required to consider the concerns posited in PPKAA's petition to intervene.  See HELCO, 145 Hawaiʻi at 17-18, 445 P.3d at 689-90; MECO, 141 Hawaiʻi at 266, 408 P.3d at 18.  As such, it would not unduly burden the Commission to afford PPKAA a contested case hearing under the circumstances of this case.

Accordingly, under the circumstances of this case, PPKAA was entitled to a contested case hearing by the Commission to comply with procedural due process, which includes the right to submit evidence and argument on the impact of the Project on

the asserted property interest.  See HELCO, 145 Hawaiʻi at 25, 445 P.3d at 697; MECO, 141 Hawaiʻi at 269, 408 P.3d at 21; However, the Commission "has the authority to set limitations in conducting the proceedings so long as the procedures sufficiently afford an opportunity to be heard at a meaningful time and in a meaningful manner on the issue of the [Project]'s impact on the asserted property interest."  HELCO, 145 Hawaiʻi at 25, 445 P.3d at 697; MECO, 141 Hawaiʻi at 270, 408 P.3d at 22.

**C.    The Commission is required to make specific findings on the Project's consistency with the Maui County General and Community Plans.**

Finally, we address PPKAA's contention that the Commission was required to find the Project consistent with the Maui County General and Community Plans prior to orally approving Carr Development's SMA permit application despite the County's designation of the Project as an HRS § 201H-38 housing development.  For reasons set forth below, we conclude that on remand, the Commission is required under the CZMA to make specific findings on the Project's consistency with the Maui County General and Community Plans prior to approval of Carr Development's SMA permit application.

In the instant case, the Maui County Council (**Council**) approved the Project under HRS Chapter 201H-38 via County Council Resolution 14-14.  Under HRS § 201H-38 2017), certain housing projects are exempted "from all statutes, ordinances, charter provisions, and rules of any government agency relating to planning, zoning, construction standards for subdivisions, development and improvement of land, and the construction of dwelling units thereon," provided that the project meets the requirements of the statute.

While it is undisputed that the Council, via Resolution 14-14, exempted the Project from having to obtain a community plan amendment, nothing in Resolution 14-14 exempted the Commission from its responsibilities under the CZMA.  Resolution

14-14 states in pertinent part:

> 1.    That, based upon the transmittals and the representations of the Department of Housing and Human Concerns and [Carr Development], the Council approves the Project's preliminary plans and specifications, as submitted to the Council on December 30, 2013, pursuant to Section 201H-38, HRS . . . <u>provided that [Carr Development]</u> **shall comply** <u>with all statutes, ordinances, charter provisions, and rules of governmental agencies relating to planning, zoning and construction standards for subdivisions, development and improvement of land, and the construction of units thereon,</u> **except for** <u>the exemptions specified in</u> **Exhibit "2"**, <u>attached hereto and made a part hereof</u>[.]

(Emphasis added).  In Exhibit 2, the Council granted certain exemptions from the Maui County Code, including that "[a]n exemption from Chapter 2.80B, MCC, <u>General Plan and Community Plans</u>, shall be granted to permit the project to proceed without obtaining a community plan amendment."

In Resolution 14-14, the Council only granted the Project exemptions explicitly listed and made a part of Resolution 14-14.  None of the exemptions included in Resolution 14-14 relieve the Commission from having to make specific findings on the Project's consistency with the Maui County General and Community Plans prior to approving the SMA permit application pursuant to HRS § 205A-26(2)(C).

HRS § 205A-26 sets forth mandatory guidelines governing the implementation of the SMA use permit procedure by the designated authority.  HRS § 205A-26(2)(C) (2017)[5] conditions the

---

[5]  HRS § 205A-26(2)(c):

> **§205A-26 Special management area guidelines.**  In implementing this part, the authority shall adopt the following guidelines for the review of developments proposed in the special management area:
>
> . . . .
>
> (2)    No development shall be approved unless the authority has first found:
>
> . . . .
>
> (C)    That the development is consistent with the county general plan and zoning. Such a finding of consistency does not preclude concurrent processing where a general plan or zoning amendment may also be required.

approval of an SMA use permit on the designated authority's finding that "[t]he development is consistent with the county general plan and zoning."  Accordingly, the county general plan, and in this case the community plan,[6] has "the force and effect of law insofar as [HRS § 205A-26] requires that a development within the SMA must be consistent with the general plan."  GATRI v. Blane, 88 Hawaiʻi 108, 114, 962 P.2d 367, 373 (1998).

Here, the Commission orally granted Carr Development's SMA permit application at the June 24, 2014 public hearing. While the Project's exemption from obtaining a community plan amendment was addressed at the hearing, the Commission did not appear to make any specific findings as to the Project's consistency with the West Maui Community Plan.  On remand, we note that the Commission is required under HRS § 205A-26(2)(C) to make a specific finding on the Project's consistency with the Maui County General and Community Plans before it may approve Carr Development's SMA permit application.

## V. Conclusion

For the reasons discussed above, the circuit court erred in affirming: (1) the Commissions oral denial of PPKAA's petition to intervene; (2) the Commission's oral approval of Carr Development's SMA Use Permit; and (3) the Commission's "Findings of Fact, Conclusions of Law, and Decision and Order Relating to Protect and Preserve Kahoma Ahupua'a Association, Michele Lincoln, Mark and Linda Allen, Patrick and Naomi Guth, and Constance B. Sutherland's Petition to Intervene."  Therefore, the Circuit Court of the Second Circuit's "Findings of Fact, Conclusions of Law, and Order Denying Appeal" and "Final

---

[6]  At the time of the June 24, 2014 public hearing on PPKAA's petition to intervene and Carr Development's SMA permit application, Maui County Code § 2.80B.030 provided in relevant part that the "community plans authorized in this chapter are and shall be the general plan of the County, as provided by section 8-8.5 of the charter."  Maui County Code § 2.80B.030 (2013). Accordingly, in the County of Maui, the community plans are part of the general plan, and similarly have the force and effect of law.  See GATRI, 88 Hawaiʻi at 113 n.5, 962 P.2d at 372 n.5 (addressing a prior version of the Maui County Code).

Judgment," both entered on June 19, 2015, are vacated.  The case is remanded to the Maui Planning Commission for further proceedings consistent with this Memorandum Opinion.

DATED:  Honolulu, Hawaiʻi, September 14, 2020.

On the briefs:

Lance D. Collins,
for Protect and Preserve
Kahoma Ahupuaʻa Association, an
unincorporated association,
Michele Lincoln, Mark Allen,
Linda Allen, and Constance B.
Sutherland.

Craig G. Nakamura,
Arsima A. Muller,
for Stanford Carr Development
LLC, a domestic limited
liability company.

Joinder on the answering
brief:

Thomas Kolbe,
Caleb Rowe,
Deputies Corporation Counsel
Department of the Corporation
Counsel,
for Maui Planning Commission,
County of Maui.

Bianca K. Isaki,
on the amicus curiae brief
for Waipio Bay Benevolent
Association, LLC, and Malama
Kakanilua.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge